## WHITFORD *v.* WHITFORD.

## Opinion delivered July 10, 1911. ·

1. PROCESS—WARNING ORDER—PAROL PROOF.—In case of service of process by publication, if no statute forbids, parol evidence may be received to prove publication of the warning order. (Page 68.)

2. JUDGMENT—FINDING AS TO PUBLICATION OF NOTICE.—If a decree or judgment does not exclude the conclusion, it will be presumed that sufficient and competent evidence was before the court to sustain a finding as to publication of a warning order. (Page 68.)

3. PROCESS—PROOF OF PUBLICATION OF WARNING ORDER.—Kirby's Dig., section 4924, providing that the affidavit of the editor, etc., of a newspaper "shall be sufficient evidence of publication" of a notice or other advertisement required by law or order of court, does not make such affidavit the exclusive evidence of such notice. (Page 68.)

4. JUDGMENT—CONCLUSIVENESS.—Where a judgment recites that due service of process was had by publication in a proceeding according to the course of the common law, the presumption will prevail upon collateral attack that the court had jurisdiction. (Page 69.)

5. SAME—COLLATERAL ATTACK.—In determining the validity of a judgment upon collateral attack, a distinction must be observed between those facts which involve the jurisdiction of the court over the parties and subject-matter and those *quasi* jurisdictional facts, without allegation of which the court cannot properly proceed and without proof of which a decree should not be made; absence of the former renders the judgment void upon collateral attack, but not so as to the latter. (Page 69.)

6. SAME—COLLATERAL ATTACK.—The fact of required residence in a divorce suit can not be collaterally questioned if it was a jurisdictional question necessarily passed upon by the court in its finding and decree. (Page 69.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Wood & Wood* and *Coleman & Lewis,* for appellant.

The decree for divorce is void for the reason that the record fails to show that the plaintiff had resided in the State for one year next before the bringing of the suit. Kirby's Dig., § 2678; 24 Ark. 522; 54 Ark. 172; 59 Ark. 441; 78 N. W. 108; 68 S. W.

971; 41 Pac. 369; 12 S. W. 90; 47 Pac. 21; 83 N. W. 1088; 12 Fla. 449; 36 Fla. 372; 3 Mo. App. 571; 8 S. W. 440; 59 Ark. 487; 55 Ark. 30; 42 Am. St. R. 395. It will not be presumed that the facts were different from those stated in the record. 18 Wall. 350; 97 U. S. 444; 110 U. S. 701; 139 *Id.* 147; 60 Fed. 225; 5 Am. St. 836; 1 S. E. 124. The decree was absolutely void. 89 Ark. 160; 91 Ark. 527. The suit was commenced when the warning order was issued on the complaint. 84 Ark. 214. The record contradicts the recitals in the decree, and this renders the decree void. 49 Ark. 397; 51 Ark. 34; 55 Ark. 30; 71 Ark. 318; 72 Ark. 394; 16 Pac. 380; 7 So. 513; 65 S. W. 237; 60 Pac. 608; 155 U. S. 404. The chancery court had jurisdiction of this case. 48 Ark. 544; 40 Ark. 401; 45 Ark. 511.

*Davis & Pace* and *Marshall & Coffman,* for appellees.

Jurisdiction is the power to hear and determine a cause. 34 Ark. 110; 6 Pet. 709. The decree in the divorce suit is binding until reversed by an appellate court. 124 U. S. 200. The required residence of plaintiff in a divorce suit cannot be questioned in a collateral proceeding. 33 L. R. A. 783; 28 Am. R. 129; 99 Cal. 374; 66 Ind. 291; 43 Ore. 513. The court had jurisdiction. 52 Ark. 200; 34 N. J. L. 418; 93 U. S. 274; 26 L. R. A. (N. S.) 172; 46 Ark. 373; 7 *Id.* 48; 59 Ark. 487; 54 Ark. 627; 21 Ark. 364; 66 Am. Dec. 52; 72 Ark. 299; 61 Ark. 464; 49 Ark. 397; 50 Ark. 461; 63 Ark. 513; 72 Ark. 101; 57 Ark. 49. The divorce decree should not be disturbed. 59 L. R. A. 135; 73 Conn. 493.

C. C. REID, Special Judge. On August 28, 1910, Charles Whitford, while engaged in his employment as fireman on a regular interstate train of the Chicago, Rock Island & Pacific Railway Company, was killed in a wreck by the derailment of the train in Saline County, Arkansas. Beulah Whitford took out letters of administration on his estate, and on the ——— day of September, 1910, brought suit in the United States Circuit Court at Little Rock, under an act of Congress commonly known as the Hepburn Act, asking recovery for the benefit of herself as widow, and, in a separate count, sought also to recover for the benefit of the estate for pain and suffering of the deceased. Judgment was confessed for $5,500.

Anna A. Whitford, the mother of Charles Whitford, filed an intervention in the proceeding, alleging that Beulah Whitford was not the widow of Charles Whitford, deceased, that she had been married previous to her alleged marriage to the said Charles Whitford and had never been legally divorced from her former husband; that she therefore had no right to maintain the suit and recover thereby, but that the right of recovery was in her, the mother of said Chas. Whitford. It was agreed that the $5,500 should be paid into the registry of the court in settlement of the claim. Subsequently, Beulah Whitford, upon her petition to the probate court, was granted permission to settle the claim, and the $5,500 was vested in her as widow of the said Charles Whitford, less one-half the amount which was paid to her attorneys for services rendered in the collection of the claim.

Anna A. Whitford was not a party to this proceeding, and had no notice of the same. On January 10, 1911, Anna A. Whitford filed her bill in the chancery court in Pulaski County, setting up all the transactions in reference to the claim and charging that Beulah Whitford was not the widow of Charles Whitford, deceased; that the order of the probate court was fraudulently obtained on the last day of the court; that she, the said Anna A. Whitford, not being a party, was unable to take an appeal therefrom; that the money in the Federal court was about to be wrongfully paid over to Beulah Whitford and her attorneys, and that she had no remedy at law.

Since the question as to whether Beulah Whitford was the widow of Charles Whitford, if determined in the affirmative, must control the decision in this case, regardless of all other questions involved, we advert to such matters only as are deemed material to the accurate presentation of that question. It appears from the record that Beulah Whitford was raised in Saline County, Arkansas, and removed to Hot Springs in October, 1899. She went to Arizona in 1900 to marry Joseph Hollen, and, arriving there October 27th, was married to him on that day. They lived together as husband and wife for about two months when on account of his alleged mistreatment she left him and returned to Arkansas. She arrived at Hot Springs about January 2, 1901. In June she returned to Arizona, and endeavored again to live with Hollen, but received the same

treatment at his hands and returned to Arkansas September 24. On December 11, 1901, she filed her complaint in the Garland Circuit Court, the material parts of which are as follows:

"The plaintiff, Mrs. Beulah Hollen, states that she resides in Garland County, Arkansas, and, except as stated herein, has so resided for more than one year last past. The plaintiff states that she was married to the defendant, Joseph H. Hollen, at Tucson, Arizona, on the 27th day of October, 1900; that she lived and cohabited with defendant as husband and wife until the 2nd day of January, 1901. * * * * Plaintiff states that she left defendant on the 2nd day of January, 1901, and returned to Arkansas, because of the reasons set forth herein; that she remained in Arkansas until the 26th day of June, 1901, when, on account of defendant's ceaseless importunities and solemn promises to do better, she again went to live with him in Arizona, but, to plaintiff's great sorrow and mortification, his former abuse and violence was much greater than before." Therefore on the 2nd day of September plaintiff was forced to and did leave the defendant and return to her home in Arkansas where she has ever since been.

On the 26th of December affidavit was made that the defendant, Joseph Hollen, was a non-resident of the State, and "filed January 6, 1902." On January 7, 1902, an attorney *ad litem* for non-resident defendant was appointed and accepted. It appears from the certificate of the clerk that the appointment of the attorney *ad litem* and warning order were attached to the complaint. There is found among the papers what purports to be the affidavit of a newspaper publisher that he had published a warning order in the case of Beulah Hollen against James H. Hollen, the affidavit to which appears to have been made November 22, 1902. The paper is not filed, nor is there any record of its having been filed. On October 25th in the Garland Chancery Court final decree was rendered as follows:

"In the Garland Chancery Court, October 25, 1902.

"And on the 25th day of October, 1902, the same being a day of the regular term of said court, the following among other proceedings were had before said court, towit:

Beulah Hollen, Plaintiff,
              v.                        Decree of Divorce.
Joseph H. Hollen, Defendant.

"On this day comes the plaintiff, by her solicitor, M. H. Holleman, Esq., this action being reached on the regular call of the docket and it appearing to * * * * * that the defendant has been duly constructively summoned for the time and in the * * * prescribed by law by the publication of a warning order which issued on the complaint * * * affidavit of the plaintiff has been made in this action; that W. H. Evans, Esq., * * * practicing attorney at the bar of this court, has been duly appointed as attorney to defend this action for the defendant, and has accepted the same more than thirty * * * next before this date, and has filed his report as such herein, that the defendant * * * wholly failed to answer or otherwise defend this action, and he, being now three times called, comes not but makes default, this action is submitted to the court for its consideration and judgment upon the complaint with its exhibits, the appointment, acceptance and report of the attorney *ad litem*, exemplified copy of the statutes of the Territory of Arizona, the affidavit of the plaintiff, and that of Mary Moore, Mrs. H. Walker, * * * Young, Mrs. Carlton and James J. Morgan, in support of the complaint, and the court, * * * and sufficiently advised as to all matters of fact and law arising herein and * * * premises being fully seen, doth consider, order, adjudge, and decree that the bonds of matrimony heretofore and now existing between the plaintiff and the defendant be and the same are hereby * * * all things cancelled, set aside and shall be forever hereafter held for naught; that * * * each party hereto be restored all property not disposed of at the commencement of this action which either party hereto obtained from or through the other during the marriage * * * in consideration or by reason thereof."

The clerk certifies that blanks in the decree were occasioned by fire; no objection being made.

On April 2, 1904, Beulah Whitford was married to Charles Whitford in Pulaski County, Arkansas, and lived with him as husband and wife until August 28, 1910, when he was killed, as has been shown. Though unimportant, it also appears that Jos. H. Hollen procured a decree of divorce from

Beulah Whitford in the courts of Arizona, May 29, 1905.

The question we are called upon here to determine is, was the decree of the Garland Chancery Court an absolute nullity as to the parties or others by whom it is encountered. As to the service, first, we must determine whether the recitals in the decree as to the defendant (Joseph H. Hollen) at the head of the decree are overturned by the irregularities which appear from the papers on file and found among them.

In cases of constructive service this court has said (*Clay* v. *Bilby,* 72 Ark. 108): "No statute forbidding, parol evidence may be received to prove publication of notice; and, if the *decree or judgment does not exclude the conclusion,* the presumption is that sufficient and competent evidence was before the court to sustain the finding as to the publication of notice." (Authorities there cited.) It is pointed out in that case that, while judgment for such irregularities in respect of service as are there referred to have been said to be "void," such statements were made when the case was here on appeal, and the judgment was directly attacked.

The law provides that the affidavit shall be "sufficient evidence" (Kirby's Digest, § 4924) of the publication of the order. But this is not exclusive. *Porter* v. *Dooley,* 66 Ark. 1; *Cannon* v. *Lunsford,* 89 Ark. 64.

In *McLain* v. *Duncan,* 57 Ark. 49, where publication was required by law to be made in two counties, and the transcript disclosed an affidavit proving publication of the notice in one county only, and neither the decree nor any order of court identified the affidavit as part of the proof of publication; this court held that the mere absence of an affidavit or the proof of publication could not be allowed to overcome the presumption arising from the recital in the decree.

We therefore conclude that in the case where the law does not require that the proof of publication shall be confined to the affidavit or papers on file, the record expressly reciting that the court found that it was properly done, and in a proceeding according to the course of the common law, the presumption must prevail upon collateral attack that the court had jurisdiction as completely and fully as was necessary for the purposes of the decree rendered.

It is further contended by appellants that the decree is void because neither the complaint upon which it is based nor the proof before the court showed that the plaintiff was a resident of Arkansas for twelve months preceding the commencement of the action; indeed it is insisted that the contrary affirmatively appears. We take it, both as to the complaint and the proof, that it may at least be regarded as indefinite and uncertain in this particular. It is, we think, manifest from both the pleading and the proof that it was intended to be alleged and proved that the plaintiff was a resident of the State for twelve months before the commencement of the action, and, treated liberally, we do not think the language expressly excludes that construction. Taking the complaint as a whole, we cannot say that the court could not or did not treat it as an allegation of residence for twelve months preceding the commencement of the action. In determining the sufficiency of a judgment against collateral attack, a distinction must be observed "between those facts which involve the jurisdiction of the court over the *parties and subject-matter and those quasi-jurisdictional facts,* without allegation of which the court cannot properly proceed and without proof of which decree should not be made; *absence of the former renders the judgment void and assailable collaterally, but not so as to the latter.*" (23 Cyc. 1074.) "*Where the court judicially considers and adjudicates the question of jurisdiction, and decides that the facts exist which are necessary to give it jurisdiction of the case, the finding is conclusive, and cannot be controverted in a collateral proceeding.*" (*Ib.* 1088.) "*A judgment cannot be impeached collaterally on account of any defects in the pleadings.* Its validity cannot be impugned, for instance, by showing that a wrong form of action was chosen, or that the *complaint does not state facts sufficient to constitute a cause of action.*" *Ib.,* 1094; *Warner v. Hess,* 66 Ark. 113.

It seems to be well settled that a judgment rendered by a court having power to deal with the general subject of the action, although against the facts or without facts to sustain it, is not void as rendered without jurisdiction and cannot be questioned collaterally. 14 Cyc. 723.

"The fact of required residence of plaintiff in a divorce suit cannot be collaterally questioned if it was a jurisdictional

question necessarily passed on by the court in its finding and decree." *Hilbish* v. *Hattel,* 33 L. R. A. 783.

An analogous question is that presented where the proceedings in a federal court failed to disclose the diversity of citizenship necessary to the jurisdiction of the court. In the case of *Dowell* v. *Applegate,* 152 U. S. p. 327, the Supreme Court of the United States held:

"1. Although the presumption in every stage of a cause in a circuit court of the United States is that the court is without jurisdiction unless the contrary affirmatively appears from the record, yet, if such jurisdiction does not so appear, the judgment of final decree cannot, for that reason, be collaterally attacked or treated as a nullity.

"2. Even if the United States Circuit Court errs in entertaining jurisdiction, its determination of that matter is conclusive upon the parties before it, and cannot be questioned by them or either of them collaterally, or otherwise than on writ of error or appeal to this court."

In *McCormick* v. *Sullivant,* 10 Wheat. 10, the court said that the circuit courts of the United States are of "limited jurisdiction, but they are not on that account inferior courts, in the technical sense of those words, whose judgments, taken alone, are to be disregarded. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error or appeal, be reversed for that cause. But they are not absolute nullities."

Counsel for appellant recognize in their brief the principle that courts of general jurisdiction, having decided in favor of their jurisdiction, are presumed to have acted upon evidence justifying such decision; but they add that "such presumption is indulged only where the record is silent; where the evidence appears in the record with respect to the jurisdiction on which the decree is based, no presumptions are indulged in." But this, we think, must necessarily be confined to questions of jurisdiction which arise in regard to the *person* or *subject-matter* of the action. Otherwise, every judgment rendered by a court where its jurisdiction rested upon its having determined the existence of a certain fact upon the existence of which its jurisdiction to proceed to judgment must depend rests forever upon the dubious proposition as to whether every other court whose pro-

ceedings encounter it will take the same view of what was established by the evidence before the court that rendered it.

We do not overlook the fact that a divorce proceeding is one in which the public is interested. The parties can waive nothing essential to the validity of the proceeding, and all statutory requirements must be observed; but in determining upon collateral attack whether such has or has not been the case we know of no reason why the same verity should not be imported to a decree for divorce which guards the sanctity of a decree rendered by a superior court having jurisdiction of the parties and the subject-matter. Bishop, in his work on Marriages and Divorce (Vol. 2, § 1533), says: "There are excellent reasons why judgments in matrimonial causes, whether of nullity, dissolution or separation, should be more stable, certainly not less, than in others, and so our courts hold. The matrimonial status of the parties draws with and after it so many collateral rights and interests of third parties that uncertainty and fluctuation in it would be greatly detrimental to the public. And particularly to an innocent person who has contracted marriage on faith of the decree of the court the calamity of having it reversed and the marriage made void is past estimation. These considerations have great weight with the court; added whereto there are statutes in some of the States according a special inviolability to such judgments."

The decree of the Pulaski Chancery Court is affirmed.