PETER A. URQUHART, an Infant, by TERESA WILSON, His Guardian ad Litem, Plaintiff, *v.* JOHN A. URQUHART et al., Defendants.

Supreme Court, Trial Term, New York County, November 1, 1949.

*Clifton F. Weidlich* and *Frank R. Serles, Jr.,* for plaintiff.

*Louis F. Huttenlocher* for John A. Urquhart, defendant, appearing specially.

*David M. Berger* for Vivien C. Urquhart, defendant.

HOFSTADTER, J. The plaintiff, an infant, seeks a judgment declaring him to be the legitimate son of the defendants John A. and Vivien Costello Urquhart. As will appear, the course for the determination of the basic legal questions which the case presents has already been charted by decision.

This is a second trial of the action. The first trial, before Mr. Justice McNALLY in February, 1948, resulted in judgment dismissing the complaint on the merits. During the pendency of an appeal from this judgment the plaintiff moved on a settled case for a new trial on the ground of newly discovered evidence. Mr. Justice McNALLY, to whom the motion was referred, in May, 1949, granted the plaintiff a new trial. In his opinion Mr. Justice McNALLY said of the new evidence proffered by the plaintiff: '' The evidence set out on this application meets the substantive requirement for a new trial in that it is likely to produce a different result upon a new trial.'' Pursuant to the order on this decision the retrial has been held before me.

Since the former trial took four court days and the minutes, exclusive of the exhibits, cover almost 400 pages of the printed case on appeal, to save time and avoid duplication of effort, I invited counsel to utilize the former record, rather than to set it out anew before me. Counsel readily acquiesced in this suggestion and entered into a stipulation by which, in effect, everything which occurred on the first trial is deemed to have taken place before me. The stipulation, however, gives the parties the right to recall any witness for further direct or cross-examination as well as to call any new witnesses and to offer any additional evidence. It also reserves the right to object

and to strike out testimony given on the first trial; by the stipulation the rulings on evidence and exhibits made on that trial stand, except where I have been requested to rule on any specific objection, exhibit or motion. The testimony of one witness no longer available was excluded from the stipulation and the testimony of this witness is not before me. Both defendants supplemented their former testimony at some length. In its appraisal of the credibility of the two defendants the court has, therefore, had the benefit of their personal appearance on the witness stand. I have considered the case on the composite record so made.

Before reaching the merits consideration must be given to the challenge of the court's jurisdiction made by the defendant John A. Urquhart, who, at the commencement of the action was, and still is, a resident of Maryland. He was served in this action without the State, pursuant to an order and appears specially in the action.

This defendant moved to vacate the service on the ground that, since he had not been served personally within the State, no personal jurisdiction over him had been acquired, and that since there was no *res* within the court's jurisdiction, the court was without jurisdiction of the action. His motion was denied by Mr. Justice BOTEIN, whose decision was affirmed by the Appellate Division (*Urquhart* v. *Urquhart,* 185 Misc. 915, affd. 270 App. Div. 759). Mr. Justice BOTEIN in his opinion held that the service complied with the order pursuant to which it was made. He held further that the subject matter of the action — the status of the plaintiff, a resident and, as an infant, a potential ward of this State and his relationship to the defendants — was a *res* within the court's jurisdiction. This determination forecloses the question of jurisdiction of the subject matter and the plaintiff's motion to dismiss the second defense which pleads lack of such jurisdiction, on which I reserved decision, is granted with an exception to the defendant John A. Urquhart.

There remains the question of personal jurisdiction. In affirming Mr. Justice BOTEIN's order which upheld the service the Appellate Division granted leave to answer. Pursuant to this leave the defendant John A. Urquhart, still appearing specially, interposed an answer in which, besides pleading to the merits, he set up the separate defense that the court has no personal jurisdiction over him. At the opening of the trial the plaintiff, relying on the holding in *Henderson* v. *Henderson* (247 N. Y. 428) that a party who, notwithstanding a special appearance,

contests an action on the merits, thereby submits himself to the court's jurisdiction as effectually as though he had entered a formal general appearance, moved to dismiss this defense. Decision on the motion was reserved.

The doctrine of the *Henderson* case (*supra*) is subject to an important qualification well stated by Chief Judge CARDOZO in *Finsilver, Still & Moss* v. *Goldberg, M. & Co.* (253 N. Y. 382, 391) in the following language: " On the other hand, the rule is well established and of general validity that where there is seasonable protest or disclaimer in response to a claim of jurisdiction, the protest or disclaimer is not nullified by proceeding thereafter to a hearing on the merits (*Harkness* v. *Hyde*, 98 U. S. 476, 479; *Southern Pac. Co.* v. *Denton*, 146 U. S. 202, 209; *Hassler, Inc.*, v. *Shaw*, 271 U. S. 195; *Jones* v. *Jones*, 108 N. Y. 415, 425)." The principle that a timely objection to jurisdiction, if overruled, is not lost by contesting the merits finds illustration in other cases. (*Hassler, Inc.*, v. *Shaw*, 271 U. S. 195, 200; *Heilbrunn* v. *Kellogg*, 253 App. Div. 753, affd. 279 N. Y. 773; *de Marigny* v. *de Marigny*, 193 Misc. 250; *Dorfman* v. *Hassett*, 187 Misc. 1048; *Stephens* v. *Molloy*, 50 Misc. 518.)

Here the defendant John A. Urquhart, after his defeat in his direct attack on the jurisdiction, has renewed and persisted in his protest, by his special appearance and defense. Thus, he has never voluntarily submitted himself to the court's jurisdiction. Under the authorities, he has preserved his challenge of jurisdiction, though he has at the same time participated in the litigation on the merits. Since he is a nonresident and was not served personally within the State, the court has not secured personal jurisdiction over him. It follows that he has established his first defense and the plaintiff's motion to dismiss it is accordingly denied with an exception. Since this ruling obviously does not curtail jurisdiction of the *res*, we proceed to the merits.

The case unfolds a strange story. The defendants John A. and Vivien Costello Urquhart, who in the interest of both brevity and clarity will be referred to by their given names, were married on June 25, 1922, in Brooklyn, New York, where both were then residents. Their matrimonial domicile was always in this State.

In December, 1931, following the execution of a separation agreement, Vivien left for Hot Springs, Arkansas. Early in March, 1932, she began an action for divorce in the Garland Chancery Court, Arkansas, and John at once filed an appearance and waiver in the action. A few days after the filing of the

divorce action Vivien was suddenly called back to Brooklyn by her mother's illness and she never returned to Arkansas. However, she and a witness on her behalf, gave their testimony by deposition in New York, and on July 12, 1932, the Garland Chancery Court entered a final divorce decree, *nunc pro tunc*, as of July 5, 1932.

On July 22, 1932, John married Marian Tourison in Greenwich, Connecticut, and there are two sons as the issue of this marriage. Until his removal to Maryland in 1942, of which State he was a resident at the commencement of this action, John maintained a home with his family at Garden City, New York.

The plaintiff was born to Vivien in the General Hospital at Saranac Lake, New York, on October 23, 1935. That Vivien is his mother is not disputed. His claim, supported by Vivien's testimony but vigorously repulsed by John, is that John is his father. He asserts not alone that John is his father but that the Arkansas divorce is void for want of jurisdiction and that, as to him, at least, John and Vivien are still husband and wife and that he is, consequently, their lawful son.

We thus face at the threshold the question whether John is, in fact, the plaintiff's father. For, were it found that he is not, there would be no occasion to pass on the validity of the divorce.

Despite the plaintiff's insistence that he is entitled to the benefit of the well-known presumption of legitimacy, I have preferred in my search for the truth in this case not to indulge that presumption. The presumption rests on the marital relation and expresses the public concern for the stability of the family.

Here, however, it is clear from the evidence that after the divorce, whether it was entitled to recognition in this State or not, and whatever the relations otherwise between John and Vivien, in their own eyes they were no longer husband and wife. In a social and conventional sense, the divorce had ended their marriage. Moreover, the respect which the finding of jurisdiction by the court granting the divorce commands (*Williams* v. *North Carolina*, 325 U. S. 226, 233; *Dalton* v. *Dalton*, 270 App. Div. 269) forbids cavalierly brushing it aside as a nullity. In the circumstances, it would be most unrealistic to apply to our problem concepts flowing from a continuing marital relation.

Besides, one of the principal issues for decision in the action is whether the Arkansas divorce is to be accorded recognition. Unless that issue is resolved in the plaintiff's favor he is in no

position to invoke the presumption of legitimacy. The court ought not to be drawn into a vicious circle by which, through the application of a presumption, a prime issue is in effect predetermined, the more so since the plaintiff must establish his status before he may even be heard to question the divorce.

For like reasons John's testimony of nonaccess is permitted to stand. Just as the presumption of legitimacy, the rule which excludes testimony of nonaccess by a spouse, is aimed to prevent the pronouncement of the offspring of a marriage as spurious (*Goodright* v. *Moss*, 2 Cowp. 591, 594). In the absence of authority to the contrary — and none has been brought to my attention — the rule should not embrace persons in the unusual situation of John and Vivien, whose marriage was terminated by a divorce decree in an action in which both appeared, though the decree is now the object of attack here. Neither section 349 of the Civil Practice Act nor cases such as *Commissioner of Public Welfare* v. *Koehler* (284 N. Y. 260, 267), *Admire* v. *Admire* (180 Misc. 68), and others cited by the plaintiff require me to reject the testimony.

It may be added that testimony of nonaccess during any period other than that in which the plaintiff may have been conceived does not touch the issue of paternity and, therefore, could contravene no rule of exclusion. That testimony does bear on the attitude of Vivien and John towards each other both before and after the divorce and hence on the probability of the existence at the critical period of the relation on which the plaintiff's claim is predicated. In the unique setting of this case admission rather than exclusion is indicated as the safer guide to correct decision.

Accordingly, the plaintiff's motion to strike out John's testimony of nonaccess is denied with appropriate exception to the plaintiff.

There is no need to recite the evidence at length. The testimony of Vivien and John on the crucial issue is in irreconcilable conflict. Vivien says that upon her return from Arkansas in 1932 and thereafter throughout 1932, 1933, 1934 and a part of 1935 she frequently saw John at her apartment on Washington Avenue in Brooklyn and at other places and that on some of these occasions they had sexual relations. In the spring of 1935 a physician found her to be pregnant and in July she left for Saranac Lake where the plaintiff, as stated, was born on October 23, 1935. She remained in Saranac Lake until the end of 1936 when she returned to Brooklyn. Early in 1937 she

arranged for the plaintiff's care by Mrs. Daisy Wilkins with whom the plaintiff has been living in Brooklyn ever since. After Vivien's return from Saranac Lake her relations with John were resumed, they often dined and visited night clubs with another couple and spent the night together. During this later period John met the plaintiff several times and there is testimony sufficient to justify an inference that John, if not explicitly, by implication, through failure to deny, admitted that the plaintiff was his son. There were differences over money matters due, according to Vivien, to her difficulty in getting John to make regular payments for the plaintiff's support. Her last meeting with John took place in New York in February, 1942, when he told her he was going south for a rest. She neither saw nor heard from him after that until this litigation was begun. This, in summary, is Vivien's version.

By his denial that he had even seen Vivien during the years from 1932 to 1935 inclusive, John necessarily disclaimed being the plaintiff's father. He denied, too, any intimate relations with Vivien at any time since 1931, if not since 1927 or 1928. Singularly enough, he does admit social contact with Vivien after her return from Saranac Lake in 1936 — that is, after the plaintiff's birth. The contact so admitted was neither casual nor conventional. Indeed, except for the denial of opportunity for intimacy and hence intimacy itself, the pattern of his meetings with Vivien after the plaintiff was born follows substantially that given by her. The question inevitably suggests itself: what was the occasion for this renewal of social relations by John, then presumably happily remarried and the father of two sons, with Vivien from whom he had been divorced more than four years and from whom he professed to have been completely estranged long before that? No answer to the question is found in the record.

John's account of his relations with Vivien is diametrically opposed to hers. Probably neither of them has been wholly truthful and only by finding the residual truth can the vital issue be decided. Further study confirms the view expressed tentatively during the trial that the case presents many obscurities and, however it is decided, much of the real truth will remain shrouded in mystery. After anxious reflection I have come to the conclusion that the plaintiff has established by a fair preponderance of the credible evidence that the defendant John A. Urquhart is his father and I so find.

An analysis of the record and a statement of the many considerations which have led me to this result would not alone

extend this opinion to inordinate length but, by the needless exposure of the details of this unfortunate case, merely cause further heartache to those affected by its outcome. I, therefore, confine myself to the statement of the following principal reasons for my decision: (1) John's admitted contact with Vivien after the divorce without explanation for the asserted resumption of the relation only after the plaintiff's birth, and not before; (2) the absence of proof of a relationship between Vivien and another man tending to identify him rather than John as the plaintiff's father; and (3) John's reactions generally when taxed with the paternity of the plaintiff. The documentary proof, too, bears heavily against John's credibility on the central issue. The new evidence confirmatory of Vivien's testimony on the first trial that she had lived at 1015 Washington Avenue, Brooklyn, from 1932 until her departure for Saranac Lake in July, 1935, on which Mr. Justice McNALLY mainly granted the new trial, and the testimony of Dr. Curnow, given before me for the first time, have likewise influenced me.

John's demeanor when faced with the copy of the letter of March 27, 1941, was most telling. Of course, the statements in the letter are not evidence and the letter was not received as proof of their truth. The letter was, however, of such character that John must have known whether he had received it or not. Yet, when pressed by the court to say categorically whether he denied receipt of the letter, his final answer was: "I believe I never received a letter like that, your Honor."

I am persuaded that the letter was in fact received by the defendant. It was properly admitted to show the defendant's attitude towards the charges made in it and the motion to strike it from the record is denied with an exception to the defendant John A. Urquhart.

The case, turning, as it does, on human relations and emotions, offers perplexities. What I had occasion to say in another connection in *Treherne-Thomas* v. *Treherne-Thomas* (178 Misc. 634, 637) may be pertinent here: " In deciding issues such as this, involving intimate personal relations, we dimly perceive other underlying impulsions, the vague shape of things unseen — imponderables — emerging from the vagaries of the mind and conditioned by the fallibilities of the human heart; beyond our capacity, as frequently beyond our competent province, to evaluate precisely and to resolve completely." The discharge of the judicial function does not require us to plumb all the depths of this arresting story. Our task is done when we find the basic fact on which the plaintiff's right to relief hinges.

The plaintiff's right to a declaration of the invalidity of the Arkansas divorce, if the Garland Chancery Court was without jurisdiction, has already been established in the action by the decision holding the complaint sufficient (*Urquhart* v. *Urquhart,* 272 App. Div. 60, affd. 297 N. Y. 689). Therefore, the only question before me is whether the allegations of the complaint on this phase of the case have been made out by the proof. In my opinion there is ample proof that the Arkansas court was imposed upon.

The Arkansas statute applicable to the divorce action obliged the plaintiff (Vivien) to establish a residence for three months next before the final judgment and for two months next before the commencement of the action. The residence so required is domicile (*Cassen* v. *Cassen,* 211 Ark. 582). It is clear from the evidence that Vivien never became or intended to become a resident of Arkansas. She did not even stay in the State physically for the full period of three months prescribed by the statute. Her brief stay in Arkansas was solely for the purpose of securing a divorce in that State. That stay was brought to a premature ending when she was summoned back to Brooklyn. She did not return to Arkansas to testify personally as plaintiff in her action. The letter from her Arkansas attorney emphasizes the simulated character of her Arkansas residence. The letter was clearly competent for the purpose for which it was received and the motion to strike it out is denied with an exception to the defendant John A. Urquhart. The minutes correctly state the limitations within which the letter was taken and the court did not enlarge them as asserted in the appendix to the brief of the defendant John A. Urquhart.

Vivien's testimony regarding her intentions when she went to Arkansas was also properly received and the motion to strike it out is denied with exception to the defendant John A. Urquhart (*Matter of Newcomb,* 192 N. Y. 238; *Reese* v. *Reese,* 179 Misc. 665, 670, affd. 268 App. Div. 993; *Sitterly* v. *Sitterly,* 186 Misc. 31). Intent being an essential element of residence, her sworn statement is clearly admissible though its weight is for the trier of the facts. Here her own conduct as well as all the surrounding circumstances overwhelmingly, if not conclusively, reveal the hollowness of the claim of her bona fide residence in Arkansas.

John, the defendant in the divorce action, was admittedly a New York resident throughout its pendency and remained such uninterruptedly until he acquired his Maryland residence in

1942. Not alone was the matrimonial domicile in New York, but neither of the parties to the divorce action was ever domiciled in Arkansas. The court, therefore, was without jurisdiction and its divorce decree void as to the plaintiff. (*Williams* v. *North Carolina*, 325 U. S. 226, 229, *supra; Urquhart* v. *Urquhart*, 272 App. Div. 60, affd. 297 N. Y. 689 *supra*.)

It is urged for the defendant John A. Urquhart that the court should, in the exercise of discretion, refuse to declare the plaintiff to be his legitimate son, because such declaration would cause embarrassment to his second wife and to the children of his second marriage who are not parties to this suit and, of course, not bound by its result.

In holding the complaint sufficient the Court of Appeals said that the question whether the second wife is an indispensable party to the action was not presented and did not pass on it (*Urquhart* v. *Urquhart*, 297 N. Y. 689 690, *supra*). Thereafter, Vivien moved to join the second wife as a party defendant; the plaintiff opposed and John defaulted. The motion came before Mr. Justice McNally who, in December, 1947, held that the second wife is not an indispensable but merely a conditionally necessary party and that since she resides outside of the court's jurisdiction her joinder would unduly delay the trial, and in the exercise of discretion denied the motion (Civ. Prac. Act, § 193). No appeal was taken and the decision therefore establishes the law of the case. While the motion before Mr. Justice McNally did not include the children of the second marriage as proposed parties, their position, so far as it affects this question, is no better than that of their mother.

If, because of the discretionary nature of an action for a declaratory judgment, discretion still resides in the trial court to decline to pronounce the rights of the parties, notwithstanding Mr. Justice McNally's decision on the motion to join the second wife, then, in my opinion, this court should not withhold from the plaintiff a declaration of his status. The plaintiff was born in and has always been a resident of this State. The matrimonial domicile of his parents was New York. They were both residents at the time of his birth and, though his father is no longer a resident, his mother is today a resident of New York. In such a situation justice dictates that a New York court should not turn away this infant plaintiff and relegate him to pursuit of his father into another jurisdiction for the relief which this court is competent to give him.

I am the more readily persuaded to this conclusion by the circumstance that the second wife was by formal notice given

the opportunity to become a party to the action and did not avail herself of it, and perhaps more so by the vigor and thoroughness with which the action has been contested and the issues explored.

The plaintiff asks that, if successful, he be awarded an additional allowance pursuant to section 1513 of the Civil Practice Act. The court is without power to grant the requested allowance because the money value of the subject matter or of the right declared does not appear. There is consequently no basis for the computation of an allowance (*Kitching* v. *Brown*, 180 N. Y. 414, 429; *Raynolds* v. *Browning, King & Co.*, 217 App. Div. 443, 450, affd. 245 N. Y. 623). The plaintiff is, however, allowed costs.

The plaintiff is entitled to judgment declaring him to be the son of the defendants, John A. Urquhart and Vivien Costello Urquhart, born in lawful wedlock, and further declaring the divorce decree entered by the Garland Chancery Court of the State of Arkansas on July 12, 1932, to be invalid and of no effect as to the plaintiff.

The foregoing constitutes the decision in the action. Settle judgment in accordance herewith.