## URQUHART v. URQUHART.

### WEIDLICH v. URQUHART.

#### Nos. 2772, 4878.

United States District Court
D. Maryland, Civil Division.
April 25, 1952.

930

Cornelius P. Mundy, and Marshall, Carey, Doub & Mundy, Baltimore, Md., for Vivien Urquhart.

Cornelius P. Mundy, Baltimore, Md., for Clifton Weidlich.

John H. Skeen, Jr., Baltimore, Md., for John Urquhart.

CHESNUT, District Judge.

These two closely related, if not companion, cases have been pending an unusually long time in this court. The first case, No. 2772, was originally filed on October 2, 1945. After numerous interlocutory proceedings therein, and as a consequence of protracted litigation in the courts of the State of New York, a supplemental and amended complaint was filed by the plaintiff on October 12, 1950.

The second case, No. 4878, was originally filed in this court February 15, 1950, and after various intermediate proceedings an amended complaint was filed June 15, 1950. The defendant is the same in both cases. In each case both the plaintiff and the defendant have now recently filed motions for summary judgment based on the pleadings and attached affidavits and exhibits. In each motion for summary judgment the parties respectively rely principally if not wholly upon the Full Faith and Credit clause of the Constitution of the United States which, in Article IV, section 1, reads:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

The defendant in each case relies upon a judicial record of the State of Arkansas rendered July 12, 1932, while the plaintiff in each case relies upon a judicial record of the State of New York rendered and made final by affirmance on appeal on May 2, 1950. See 196 Misc. 664, 92 N. Y.S.2d 484, 277 App.Div. 752, 97 N.Y.S. 2d 200. An exemplified copy of the Arkansas judicial record has been filed by the defendant. It includes a decree for absolute divorce between the plaintiff, Vivien C. Urquhart (the plaintiff in No. 2772) and John A. Urquhart, the defendant in both cases in this court. The defendant contends that the decision of the Supreme Court of the United States in Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552, is a conclusive authority in his favor in both cases pending here, with the exception of that part of the complaint of Vivien C. Urquhart which is based on accrued and unpaid alimony due under the Arkansas divorce decree. The plaintiffs in both cases dispute the defendant's contention.

The defendant's motion for a summary judgment is filed in accordance with rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and as provided for in subsection (d) thereof, prays as an alternative that the court, at the hearing of the motion, by examining the pleadings and evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted; and thereupon make an order specifying the facts that appear without substantial controversy and directing such further proceedings as are just. The rule further provides in this connection that "upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

I have heard counsel at length upon these motions, and have examined the lengthy papers that have been submitted in connection therewith. They consist principally of the amended complaints and answers thereto and the motions for summary judgment and the affidavits and exhibits filed therewith. From them I find that the following material facts exist without controversy.

1. On June 25, 1922 Vivien C. Urquhart and John A. Urquhart were duly married in the State of New York and had their domicile there until on or about December 18, 1931. Shortly before the latter date they entered into an agreement of separation making a division of personal properties or assets, and the husband agreeing to pay the wife $10 weekly as alimony after December 31, 1931. About December 18, 1931 the wife went to Hot Springs, Arkansas, for the purpose of obtaining a divorce. On February 29, 1932 she filed a suit for absolute divorce from John A. Urquhart. He personally appeared as the defendant in the case after receiving due notice thereof while in New York, and waived all defensive proceedings therein. It appears from the record in the case that depositions of witnesses were taken and filed and the court on July 12, 1932, rendered its decree of absolute divorce between the parties and awarded the plaintiff alimony as provided for in the agreement mentioned. The decree recites that the court found that the plaintiff was a bona fide resident of the State of Arkansas. There was no appeal taken from this final decree and apparently no other later or further proceedings have ever been instituted in the case in Arkansas.

2. In March 1932 the plaintiff Vivien C. Urquhart returned to New York and has resided there continuously since that time. About July 25, 1932 the defendant John A. Urquhart remarried in the State of Connecticut but continued to reside in New York until 1942 when he, his second wife and their two children moved to Maryland where they have since resided.

3. On October 23, 1935 in New York, a son was born to Vivien C. Urquhart and named Peter Urquhart. Vivien Urquhart contends that the defendant John A. Urquhart is the father of this child. The defendant John A. Urquhart denies this. There was no remarriage by Vivien Urquhart after the Arkansas divorce.

In 1944 Teresa Wilson, as guardian ad litem for Peter Urquhart, filed a petition in the Supreme Court of New York (a trial court) for a declaratory judgment to the effect that Peter Urquhart was the legitimate son of Vivien and John Urquhart born in lawful wedlock. Vivien and John Urquhart were named as parties defendant in the case. The second wife of John Urquhart and their two children were not made parties. At that time John Urquhart was a bona fide resident of Maryland and was summoned only by service made on him in the State of Maryland. He appeared only specially in the case by attorney but had the opportunity to and did contest the merits of the case with respect to the paternity of Peter Urquhart. As a witness in that case Vivien Urquhart testified, with respect to the Arkansas divorce, to the effect that she had never intended in good faith to become a resident of Arkansas and had gone there only for the purpose of procuring the divorce and had in fact returned to New York a few days before the expiration of a ninety day stay there (the Arkansas law requiring a residence of ninety days for jurisdictional purposes) by reason of the sudden critical illness of her mother in New York. After protracted litigation in that proceeding including several appeals by the respective parties, the trial court finally determined (1) that the Arkansas divorce was void because the plaintiff therein had never intended to become a bona fide resident of Arkansas but had gone there only for the purpose of obtaining a divorce; (2) that Peter Urquhart was the son of Vivien and John Urquhart born during lawful wedlock but that (3) the defendant John Urquhart having throughout the litigation appeared only specially was not personally bound by the declaratory decree in rem. 196 Misc. 664, 92 N.Y.S.2d 484. This judgment was affirmed without opinion by the Appellate Division of the Supreme Court of New York on May 2, 1950, 277 App.Div. 752, 97 N.Y.S.2d 200, and became final as no appeal was taken therefrom by any party. In reaching this final decision the New York court allowed the validity of the Arkansas divorce to be successfully collaterally attacked by Peter Urquhart, a child born to Vivien three years after the divorce decree.

The amended complaints in the two cases here were filed subsequent to this final de-

cision of the New York court. In the first case the amended complaint of Vivien Urquhart asserts two claims against the defendant. The basis for one claim is that the defendant abandoned and deserted their legitimate son Peter in 1942 and has failed to contribute to his support since then, in consequence of which the plaintiff as mother has been required to provide necessaries for his maintenance and support, in the amount of over $29,000. Her second claim consists of accrued and unpaid alimony in the amount of over $7,000 arising under the separation agreement made in 1931 and confirmed by and included in the Arkansas divorce decree of 1932.

In the second case in this court the complaint is filed by Clifton Weidlich, a New York lawyer, who makes claim on the defendant as the father of Peter Urquhart for professional services rendered as necessaries to Peter Urquhart in the protracted litigation resulting in the New York declaratory judgment establishing the legitimacy of Peter as the son of John Urquhart. The amount claimed for the services so rendered is $28,500 plus expenses disbursed in the litigation in the amount of $854.78.

In his answers to both cases the defendant has denied liability but on the hearing of the motions recently argued in this court counsel for the defendant, as to the first case has stated that, in order to avoid the delay and expense of further litigation the defendant is willing to admit liability for unpaid alimony, the amount thereof to be determined on evidence to be offered by the parties, provided the court reaches the conclusion that the demands of the plaintiffs in both cases for necessaries furnished to Peter Urquhart cannot be recovered in this case by reason of the illegitimate status of Peter Urquhart necessarily resulting from the Arkansas decree and the latter's birth three years thereafter.

As I find from the papers and arguments submitted that there is no valid legal defense interposed by the defendant in the first case to the plaintiff's claim for some amount of accrued and unpaid alimony, it is obvious that the motion for summary judgment by the defendant in that case must be overruled. But nevertheless in accordance with subsection (d) of Rule 56 I have thought it appropriate to find the facts now established in the case without substantial controversy.

Apart from the claim as to alimony counsel contend that the only remaining question in the case as to liability of the defendant in both cases depends on a question of law under the established facts. That question of law is whether, in this jurisdiction, Peter Urquhart must be regarded as the legitimate or illegitimate son of Vivien and John Urquhart. While on the papers John Urquhart denies that he is the father of Peter, I assume for the purpose of the motion for a summary judgment in favor of the defendant with respect to the claim for necessaries that he is the father. The sole question is whether Peter is the legitimate or illegitimate son of John Urquhart. If the Arkansas divorce decree must be treated as valid by this court and not subject to collateral attack here, under the Full Faith and Credit clause of the Constitution, then it is not denied by counsel for the plaintiff that Peter must be treated as an illegitimate son, and in that case it is not contended the father is legally liable for the necessaries. On the other hand, it is contended for the plaintiffs that the Arkansas divorce has already heretofore been successfully collaterally attacked and held invalid by a New York court and that the legitimacy of Peter Urquhart has been established by final declaratory judgment by the New York court in the in rem proceeding as to the status of Peter Urquhart in New York and therefore this court must give full faith and credit to the New York judgment which is later in date than the Arkansas divorce. But again it is important to note that the New York court itself has held that John Urquhart was not personally bound by the declaratory judgment in the in rem proceeding because he was never served personally in New York in the case and the appearance entered for him by his attorney was a special appearance only and so maintained throughout the whole litigation.

The question now presented certainly arises on unusual facts. The Arkansas divorce was rendered July 12, 1932. The husband John Urquhart remarried during the same month. He and his second wife resided in New York where Vivien Urquhart also resided. By his second marriage John Urquhart has two children, the eldest of whom is apparently older than Peter Urquhart, who was not born until three years after the Arkansas divorce. No direct attack in the Arkansas court has ever been made by any one up to the present time. The first collateral attack that was made on the divorce was about 12 years after its rendition and then the attack came not from a party to the case but from a stranger thereto, Peter Urquhart, who, not being in being had no rights existing at the time of the divorce.

The first question to be considered is the effect here in the District Court of Maryland of the New York decision holding that Peter Urquhart was entitled to collaterally attack the Arkansas divorce and had successfully done so, on the evidence of Vivien Urquhart who testified that she at no time had a bona fide intention of becoming a resident of Arkansas; and also holding, on very contradictory evidence, that John was the father of Peter. The plaintiffs in the two cases here set up this New York judgment as to the legitimacy of Peter as final and conclusive under the full faith and credit clause and not open to any further defense or attack by John in this court. But the defendant disputes this legal contention. He points out that intrinsically considered the New York proceeding, on the part of Vivien, should be regarded as collusive, and beyond that the final result must be considered clearly erroneous under the subsequent decision of the Supreme Court in the case of Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552. However, these two considerations seem to be beside the point with respect to the question of the legal effect here of the New York judgment. But more importantly the defendant points out that by the very New York decision on which the plaintiffs rely it was adjudicated that he, the defendant,

had not been validly served with process in the case and was therefore not subjected to the personal jurisdiction of the court. Still again, while the New York judgment is referred to as a judgment in rem, it is more properly to be classified as *quasi* in rem only. It dealt with an intangible matter, the status of Peter as legitimate or illegitimate. It does not have the effect of a fully in rem proceeding such as the condemnation of land or the ownership of tangible personal property. It apparently affects no existing property rights of Peter.

The opinion in the final New York judgment is to be found reported in 196 Misc. 664, 92 N.Y.S.2d 484, entitled Urquhart v. Urquhart. This opinion was affirmed without opinion, 277 App.Div. 752, 97 N.Y.S.2d 200, by the Appellate Division of the Supreme Court of New York and no further appeal was taken therefrom. The prior protracted litigation in the case is clearly reviewed in Judge Hofstadter's opinion. Briefly summarized, the suit originated in a special proceeding under the New York Practice Act to obtain a declaratory judgment of the legitimacy of Peter. The defendants were Vivien and John Urquhart. The latter was then a resident of Maryland and served only pursuant to a court order and not personally served with process in New York. His appearance in the litigation at the commencement and throughout was special only. His motion to dismiss the proceeding on jurisdictional grounds as to procedure was overruled by the trial court and subsequently affirmed on appeal to the New York Court of Appeals which held that Peter Urquhart had sufficient standing in court to collaterally attack the validity of the Arkansas divorce and was legally entitled to do so. At the first trial of the case on the facts the trial judge dismissed the case on the merits with respect particularly to the alleged paternity of John as the father of Peter, but a new trial was granted on the plaintiff's motion setting up after-discovered evidence. The opinion of Judge Hofstadter was on the second trial on the facts. In the opinion he summarizes much of the testimony

which was highly contradictory on the question of parenthood and, as he remarked, the facts of the case contain many "obscurities". His finding on the evidence, however, was as has been stated. With respect to personal jurisdiction over the defendant John Urquhart the opinion said at page 668 of 196 Misc. at page 488 of 92 N.Y.S.2d:

"Here the defendant John A. Urquhart, after his defeat in his direct attack on the jurisdiction, has renewed and persisted in his protest, by his special appearance and defense. Thus, he has never voluntarily submitted himself to the court's jurisdiction. Under the authorities, he has preserved his challenge of jurisdiction, though he has at the same time participated in the litigation on the merits. Since he is a non-resident and was not served personally within the state, the court has not secured personal jurisdiction over him. It follows that he has established his first defense and the plaintiff's motion to dismiss it is accordingly denied with an exception. Since this ruling obviously does not curtail jurisdiction of the *res,* we proceed to the merits."

On the point immediately under discussion, I put aside as irrelevant the defendant's contention that the New York decision was legally erroneous, under the recent decision of the Supreme Court in Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552, in permitting collateral attack on the Arkansas judgment of divorce because the New York judgment even if erroneous was a final decision not appealed from either to the New York Court of Appeals or to the Supreme Court of the United States, and therefore, even though erroneous, I take it, would be entitled to full faith and credit if otherwise entitled thereto. But in view of the nature of the proceeding itself (quasi in rem only) and more importantly because the New York court itself has determined that it was not personally binding on the defendant John Urquhart, I take the view on this case that it is not in and of itself binding and conclusive on the defendant here. See Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561. Therefore the plaintiff's motions for summary judgment in both cases are hereby overruled.

The next question for consideration is the defendant's contention that the Arkansas divorce, in connection with the Arkansas judicial decisions with respect to who may collaterally attack such a judgment is conclusive here in favor of the defendant under the authority of Johnson v. Muelberger, supra. In that case the second wife of a New York resident obtained a Florida divorce from her husband. He appeared in the proceeding. Later he married again and after his death his third wife elected under the New York law to take the statutory one-third share of his estate. This was contested in New York by a daughter of the deceased by his first wife. She was the sole legatee under his will and as such challenged the validity of the Florida divorce on the ground that the plaintiff therein (the second wife) had not complied with the ninety-day residence requirement of Florida. The Supreme Court held that as the daughter could not have challenged the validity of the Florida divorce in the courts of that State she was precluded by the full faith and credit clause from collaterally attacking it in the courts of New York. At page 589 of 340 U.S., at page 479 of 71 S.Ct., 95 L.Ed. 552, it was said in the opinion of Mr. Justice Reed:

"When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them anywhere in the Union. The Full Faith and Credit Clause forbids."

Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552, was decided by the Supreme Court March 12, 1951 on certiorari to the Court of Appeals of New York, 301 N.Y. 13, 92 N.E.2d 44. In its opinion the Court of Appeals of New York had recognized as the then applicable law that if the Florida court would not have permitted an attack on the Florida divorce by the deceased parent's daughter, then the New York court should not permit it;

but the court on examination of Florida decisions concluded that such an attack by the daughter would have been permissible in Florida. It was for this reason only, therefore, that the collateral attack was permissible in New York. The Supreme Court reversed the holding because its independent examination of the Florida law was to the contrary. It may be relevant to note that the position by the New York Court of Appeals in 1950 in Johnson v. Muelberger, 301 N.Y. 13, 92 N.E.2d 44, is seemingly variant from the position which it had formerly taken in the Peter Urquhart case with regard to the Arkansas judgment. In the latter case the New York Court, 297 N.Y. 689, 77 N.E.2d 7, had answered affirmatively questions on appeal as to whether Peter Urquhart could collaterally attack the Arkansas divorce, without opinion or comment as to whether the Arkansas law would have permitted such an attack by Peter Urquhart born three years after the date of the divorce decree. And it may be noted in passing that it was some months after the decision of the New York Court of Appeals in the Peter Urquhart case that the Supreme Court in June 1948 decided three important cases of similar nature with respect to the effect of the full faith and credit clause on out-of-state divorces, and particularly dealing in two of such cases with situations where, as in the Urquhart case in Arkansas, both spouses had been in the fullest sense parties to the out-of-state divorces. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429; Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451; see also Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561. It is important to note that the full faith and credit clause has been given in recent Supreme Court decisions different effects on out-of-state divorces where both spouses have been parties to the case, as compared with such a foreign divorce where one spouse has not been made a party by actual but only constructive service. In those cases, as Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552; Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26; Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429, and Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451, where both spouses have been parties, collateral attack has not been permitted by either party in the State of their original matrimonial domicile, while in cases such as Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 and Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, and Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561, where only one spouse has been a party, the out-of-state divorce is only prima facie effective and may be collaterally attacked by the non-party spouse. Counsel for the plaintiffs refer to Sutton v. Leib, 342 U.S. 402, 72 S.Ct. 398, as consistent with his position but I find it really consistent rather with Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552.

Counsel for the defendant contends that the law of Arkansas is similar to that of Florida with respect to who may not attack a divorce decree where both spouses have been personally subjected to the jurisdiction of the court. He cites several Arkansas cases in support of the contention, Oberstein v. Oberstein, 217 Ark. 80, 228 S.W.2d 615; Whitford v. Whitford, 100 Ark. 63, 139 S.W. 653; Crittenden Lumber Co. v. McDougal, 101 Ark. 390, 395, 142 S.W. 836; Swindle v. Rogers, 1934, 188 Ark., 503, 66 S.W.2d 630; St. Louis, S. F. Ry. Co. v. Wardell-Whitton Road District, 157 Ark. 557, 560, 249 S.W. 17. See also, as statement of a generally accepted principle on the law of judgments, Freeman on Judgments (5th Ed.) 636, section 319 reading as follows, (and quoted in the Johnson v. Muelberger case):

"It is only those strangers who, if the judgment were given full credit and effect, would be prejudiced in regard to some pre-existing right, that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause nor appeal from the judgment, they are by law allowed to impeach it whenever it is attempted to be enforced against them *so as to affect rights or interests acquired prior to its rendition.*" (Emphasis supplied.)

I have considered these cases. With the possible exception of Oberstein v. Oberstein they seem to be in accord with the generally well accepted principles regarding permissible collateral attack on judgments; but I find no Arkansas case which has dealt with the precise situation that we have here, that is, an attack on a two-party spouse divorce judgment by a child born more than a year later. Indeed no case has been cited by counsel nor otherwise found by my research, other than the New York Peter Urquhart case, which has permitted an attack by a person so situated. For annotated cases and commentary thereon see 12 A.L.R.2d 717–748 on the subject (1950) of "Standing of Strangers to Divorce Proceeding to attack Validity of Divorce Decree", and particularly for New York cases, page 730; Brooklyn Law Review, Vol. 17, p. 70 (1950) under title of "The Dilemma of Third Party Attacks upon Foreign Divorces", and particularly pages 86–92; 17 Am.Jurisprudence—Divorce—§ 484, and notes thereon, in 1951 Cum.Pocket Part; Restatement of the Law of Conflict of Laws, § 112. Whether the Arkansas court would permit such an attack on one of its divorce judgments begun for the first time more than twelve years after its rendition by a child not in existence at the time of its rendition and after a second marriage and birth of issue is apparently the precise problem that is presented in the instant case.

▮▮ It seems to be essential to the defendant's contention in support of the motion for summary judgment to affirmatively show that the Arkansas courts would not permit its divorce decree to be so attacked. While it seems to appear from the generally accepted principles affecting collateral attack on out-of-state divorce judgments that a stranger to the case would not be permitted to so attack unless he had rights affected thereby at the time the decree was rendered, counsel for the defendant has not been able to cite any Arkansas decision on the precise question here involved. And it is possible that the Oberstein case above referred to may throw some doubt upon the correctness of the affirmative position maintained by counsel for the defendant. The result in the Oberstein case was unusual. The Obersteins had their matrimonial domicile in New York until they agreed on a separation and money payments by the husband which included an agreement on the part of the wife to go to Arkansas and obtain an absolute divorce. She did so staying in that State for that purpose, however, only one day. Very shortly after the divorce the husband re-married. Thereafter a further disagreement arose between them as to money payments in consequence of which the first wife went again to Arkansas and directly attacked the divorce on the ground of lack of adequate residence on her part. After evidence taken which, as found by the court, clearly established flagrant fraud on the part of both parties, the trial court cancelled the original divorce and the defendant husband appealed. The Supreme Court on appeal while re-stating (with apparent approval) the generally prevailing rule that neither party to a divorce decree could attack it where both parties were participants in the fraud, nevertheless, treating the appeal as a trial de novo, neither affirmed nor reversed the decree but entered an order as follows:

"We hold that the divorce decree rendered in this cause by the Garland Chancery Court on October 28, 1947 was and is void; and this adjudication of invalidity prevents the divorce decree from being entitled to full faith · and credit in this, or any other State.

"We hold that each of the parties— Mr. and Mrs. Oberstein—is precluded from any relief of any kind involving the said decree; she from having it vacated, and he from having it recognized.

"We refuse to adjudge costs in favor of either party, since both are culpable; and, without reversing or affirming, we direct that a mandate issue remanding this cause to the Garland Chancery Court so that the holding here will be entered as the decree of that Court." [217 Ark. 80, 228 S.W.2d 623.]

And it was further ordered that the local authorities investigate the professional ac-

tivities in the securing of the divorce decree, and that attention be called to the New York authorities for possible participation therein of New York counsel.

It is not presently entirely clear to me what effect, if any, this seemingly latest decision of the Arkansas court has on the problem here involved. While counsel for the defendant has cited the Oberstein case he has not so far discussed it either orally or on brief, apparently resting his contention on the other and earlier Arkansas cases; and counsel for the plaintiffs has made no substantial argument as to the effect of the Arkansas decisions. But in this connection I have noted that in the affidavit of counsel for the defendant filed with its motion for summary judgment he has stated that in addition to the Arkansas reported decisions he has obtained an expert opinion of Arkansas lawyers to the effect that no such attack as is here involved would be permissible in Arkansas. However, this statement, now only hearsay, cannot be accepted as evidence at the present time.

Enough has been said to show both the novelty and difficulty of the more important questions of law here involved. As both parties have moved for summary judgment I think the court would be justified in pronouncing judgment on the basis of the facts established without controversy if the trial judge felt satisfied that the decision should be in favor of one or the other of the parties. But I do not understand that the court is obliged to do so when it feels that the difficult subject matter requires further consideration and that a trial of the case may possibly develop facts which are not express or necessarily implicit in the motions for judgment.

I conclude that the defendant's motion for summary judgment in his favor establishing non-liability except as to some liability for accrued alimony should be overruled without prejudice and the case should be set down for a fuller hearing on the law and facts as promptly as is reasonably possible. It occurs to me to suggest that at the trial there are other questions which may relevanty be considered and which at least have not yet been fully argued. Some of these questions are as follows:

1. As the defendant was not subjected to the jurisdiction of the New York court, is the New York judgment in its special quasi in rem proceeding admissible at all in evidence against the defendant in this jurisdiction, and if admissible is it to be given prima facie effect only in its findings of the facts or to be regarded only as the persuasive finding of the courts of another State as to the law and facts, or both or either;

2. In the New York case the collateral attack on the Arkansas divorce was permitted to be made by Peter Urquhart the alleged legitimate son of John A. Urquhart. While the finding of the court seems to have been based largely on the evidence given by Vivien, it is to be noted that she was not, nominally at least, the attacking party in the case. But in the instant proceeding if, as I think, the New York judgment is not conclusive in her favor against the defendant, it would appear that she would necessarily become the attacking party here and the question would therefore be presented as to whether she was not clearly estopped from making such an attack, see in this connection Bussey v. Bussey, 95 N.H. 349, 64 A.2d 4, 12 A.L.R.2d. 151;

3. Still a further question may possibly arise. Vivien Urquhart is here suing for necessaries alleged to have been supplied by her personally for the maintenance of her allegedly legitimate child. This would seem to be necessarily based on her continued status as the wife of John A. Urquhart the defendant in this case. As the jurisdiction of this court is based on diverse citizenship only, the further question seems to be presented whether under the law of Maryland a wife can sue the husband for necessaries furnished to a child. In a recent Maryland decision filed April 4, 1952 entitled Irene Gregg v. Gerald Gregg, 87 A.2d 581, the Maryland court held that a wife could not sue the husband for necessaries for herself. No opinion is expressed as to whether that decision, if otherwise applicable here, would bar Vivien Urquhart in the case now presented. See also another

938

recent decision of the Maryland Court of Appeals in Agnes Millar v. Edith May Millar, Infant, 87 A.2d 838, on the effect of a California divorce obtained by a husband, without the wife's appearance therein, on property held by the husband and wife by the entireties, after the death of the husband in California and while the wife continued to reside in Maryland. The husband, after being denied a divorce from the wife in Maryland, moved to and resided in California and there obtained his divorce and remarried and died leaving surviving child. The California wife claimed an interest in the Maryland property. The former wife resisted the claim but the Court held that the tenancy by entireties was terminated by the California divorce the procedure for which was correct under the California law, and in the absence of proof to destroy the jurisdiction of the California court. The opinion by Chief Judge Marbury appears to be based largely upon the holding of the Supreme Court in Williams v. North Carolina, 317 U.S. 287, 63 S. Ct. 207, 87 L.Ed. 279.

For all these reasons the motions for summary judgment by each party in both cases are hereby overruled. Counsel are requested to present the appropriate orders promptly in due course.