BLANTON *v*. FORREST CITY MANUFACTURING COMPANY.

Opinion delivered May 19, 1919.

1. CONTRACTS—MUTUALITY.—There must be mutuality in a contract to make it enforceable.

2. CONTRACTS—ACCEPTANCE OF OFFER.—An offer to sell land for a stipulated price to any person who might desire to purchase same for manufacturing purposes, without any consideration, was not binding until some expense, loss or legal obligation thereunder has been incurred.

3. SUBSCRIPTION—ACCEPTANCE.—The acceptance of a subscription is ineffectual unless made within the subscriber's lifetime.

4. EXECUTORS AND ADMINISTRATORS — CONTRACTS — AUTHORITY OF
   EXECUTOR. — An executrix cannot create a new liability where
   none existed before, by binding the estate upon an unaccepted sub-
   scription which was ineffectual because not accepted during the
   subscriber's lifetime.

5. JUDGMENT—COLLATERAL ATTACK.—In determining the validity of
   a judgment upon collateral attack, a distinction must be observed
   between those facts which involve the jurisdiction of the court
   over the parties and subject-matter and those *quasi* jurisdictional
   facts without allegation of which the court cannot properly pro-
   ceed and without proof of which a decree should not be made.

6. JUDGMENT—VALIDITY.—A judgment of the probate court ordering
   specific performance of deceased's subscription agreement to con-
   vey land, under Kirby's Digest, section 213, was void where it ap-
   peared upon the face of the judgment reciting the subscription
   that the subscription had never been accepted and was therefore
   unenforceable.

Appeal from St. Francis Chancery Court; *Edward
D. Robertson,* Chancellor; reversed.

### STATEMENT OF FACTS.

Annie Mabel Blanton and John Cecil Blanton brought
a suit in equity against Forrest City Manufacturing Com-
pany, Forrest City Compress Company and the City of
Forrest City to have their interest declared in certain
lands in the possession of the Forrest City Compress
Company and for an accounting of the rents and profits
thereof. The material facts are as follows:

Annie Mabel Blanton and John C. Blanton are the
children of Jas. P. Blanton, deceased, who in his life-
time owned the lands in controversy. Jas. P. Blanton
made a will in which his wife, Mary E. Blanton, and his
two children, Annie Mabel Blanton and John Cecil Blan-
ton are the principal beneficiaries. After directing that
all of his just debts and funeral expenses be paid, and giv-
ing a bequest of $5 each to his brother and sister, the tes-
tator devised to his wife one-half of all the residue of his
estate, and to his son, John Cecil Blanton, and to his
daughter, Annie Mabel Blanton, each one-fourth of the
residue of his estate. By a subsequent clause of the will
the testator provided that his wife should have the use

of and control portions of his estate bequeathed to his son and daughter until each should respectively become of age, at which time his wife is directed to pay each of them his or her portion of the estate. The will then directs that the homestead located in Forrest City, Arkansas, should be included as a part of the one-half devised to his wife. The testator appointed his wife as the executrix of his will. On the 8th day of February, 1904, Jas. P. Blanton and Mary E. Blanton, his wife, signed the following instrument in writing:

"J. P. Blanton and wife to W. Gorman, Mayor, *et al.*

"Agreement and option.

"Know all men by these presents, that we, J. P. Blanton and Mary E. Blanton, his wife, of Forrest City, St. Francis County, Arkansas, in order to aid in the locating of industries at said place, do hereby agree with Walter Gorman, as mayor of the incorporated town of Forrest City, and his successor and successors in said office, and such third or other persons as may desire locations hereunder, as follows:

"Beginning at a stake on the half-section line running north and south dividing the northeast quarter and the northwest quarter of section thirty-three (33), township five (5) north, range three (3) east, at a point where said line intersects with the south line of the present right of way of the Choctaw, Oklahoma & Gulf Railway, thence running south 70 degrees west with the said south line of said railroad right-of-way, 2,692 feet to a stake; thence running south 12 degrees and 45 minutes east, 255 feet and 5 inches to a stake; thence north 89 degrees and 45 minutes east 2,557 feet to a stake; thence running north on said half-section line to the place of beginning, containing in all forty-four and fifty-seven hundredths (44.57) acres of land.

"And it is expected that portions of said land will from time to time be wanted by parties desiring to establish manufacturing plants or other industries.

"Therefore, the first parties hereto agree, to accept one hundred dollars per acre for any portion of said land

and to convey the same by good and sufficient warranty
deed, upon payment of the purchase money, which shall
immediately be due, and any person or persons whose
purpose and selection and extent of site has the approval
of the mayor and common council of the incorporated
town of Forrest City, shall be taken and considered a
party to this agreement and stand in the relation of a
purchaser by title bond from the first parties thereto, and
have immediate right of possession, in advance of execu-
tion and delivery of deed, provided the right to select lo-
cations thereunder shall be limited to such as are ap-
proved by said mayor and common council, within three
years from this date.

"Witness the hands of the first and second parties
hereto, this 8th day of February, 1904."

Jas. P. Blanton departed this life on the 10th day of
May, 1904, and his will was duly admitted to probate, his
wife, Mary E. Blanton, being appointed executrix thereof.
Subsequent to the death of Jas. P. Blanton, the town of
Forrest City by its mayor and common council passed a
resolution accepting the donation of the land described
in the written agreement above set forth. The resolution
authorized the Merchants & Planters Compress Company
to purchase ten acres of said tract of land and the com-
pany paid to Mrs. Mary E. Blanton therefor the sum of
$1,000 and she executed a deed for the same to the com-
pany. This was an adequate price for the land at that
time.

The Merchants & Planters Compress Company, a
corporation doing business at Forrest City, Arkansas,
presented to the probate court its petition reciting the
above facts and asking for the specific performance of
the contract of the ten acres of land, being a part of the
land described in the written instrument above set forth.
The petition was presented to the probate court at its
July term, 1907, and an order was entered of record re-
citing substantially the facts above set forth and author-
izing and directing Mary E. Blanton, as executrix of the
estate of Jas. P. Blanton, deceased, to execute to the Mer-

chants & Planters Compress Company a deed conveying to it the ten acres of land in controversy.

Pursuant to this order of the probate court, on the 26th day of July, 1907, Mary E. Blanton executed to said Merchants & Planters Compress Company a deed to said lands. The Forrest City Compress Company is a corporation and is the successor of the Merchants & Planters Compress Company. Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of the defendants and dismissed the complaint of the plaintiffs for want of equity. The plaintiffs have appealed.

*C. W. Norton,* for appellants.

1. The proceedings were ineffectual to divest plaintiffs' title or confer any upon defendants for three distinct reasons:

(1) The so-called option or agreement to sell, was a mere offer to sell, which was not accepted before Mr. Blanton's death, and which did not survive his death.

(2) If it did survive it was not accepted within three years, the time limited, and

(3) If it survived and was accepted within the three years, it was not such a contract for the conveyance of lands, etc., as the probate court could enforce by specific performance against the executrix. 6 R. C. L. 603; Kirby's Digest, § 6137; 6 R. C. L. 604; 1 Elliott on Cont. 394, § 232; 9 Cyc. 285; 21 Am. & Eng. Enc. 926; 89 Ark. 368; 117 S. W. 561.

2. As there was no acceptance prior to Blanton's death, which occurred within three months, it was thereby withdrawn. 39 Cyc. 1189; 1 Elliott on Cont. 42. See also 6 R. C. L. 603; 82 Ark. 573-581.

3. As to the right to rents and profits, see 38 Cyc. 66; 48 W. Va. 108; 35 S. E. 980.

*Mann, Bussey & Mann,* for appellee.

1. This is a collateral attack upon the judgment of the probate court. The court made the order under Kirby's Digest, section 213. Every recital necessary to give

the court jurisdiction appears in the order, and its judgment cannot be attacked collaterally. This is a rule of property in this State. 52 Ark. 341; 71 *Id.* 480; 73 *Id.* 612; 92 *Id.* 611; 84 *Id.* 32.

The case in 128 Ark. 42-55 settles all the issues here. The probate court had jurisdiction and its judgment is conclusive. The sufficiency of the consideration cannot be inquired into. 1 Elliott on Cont., § 207-9.

2. The writing was a complete executory contract and not a mere offer. The offer was accepted within the time and the contract was executed. There was no equity in the complaint and the court properly dismissed it. *Supra.*

HART, J., (after stating the facts). It is deemed appropriate to state at the outset that Annie Mabel Blanton became 18 years old on the 25th day of August, 1917, and John Cecil Blanton arrived at the age of 21 years on the 30th day of September, 1917. The present suit was commenced on the 24th day of September, 1917.

It may be, also, appropriately stated here that this is not a case of mutual subscription for a given object where the promise of others is a good consideration for the promise of each.

The contract which we have copied in our statement of facts is the basis of this suit. It is well settled that there must be mutuality in any contract to make it enforceable.

It is the contention of counsel for the plaintiffs that the instrument in question was in effect a subscription of the lands and constituted a mere offer which must have been accepted or some expense or legal obligation incurred thereunder in order that a legally enforceable contract might be effected. In this contention we think counsel are correct. The rule is well stated in *Wayne, etc., Collegiate Institute* v. *Smith,* 36 Barb. (N. Y.) 576, there the court said: "Gratuitous promises or propositions to pay money upon condition, or upon the happening of some event, or the doing of some act, or incurring some ex-

pense, loss or legal obligation, become binding as legal and valid contracts upon acceptance and performance of the stipulated condition  *  *  *. Upon this principle all difficulty in regard to this class of subscriptions seems to be obviated, and a recovery upon them can be had without resorting to the questionable expedient of patching up a contract by extrinsic parol evidence, from which to help out the subscription paper by the implication of a promise. The object of the subscription is expressed in the paper itself. The terms upon which the defendant agrees to pay are therein specified. When these terms are complied with, or engagements and liabilities incurred on the face thereof, a complete contract is made, and the liability of the defendant has become absolute.''

The rule was recognized and applied by this court in the case of *Rogers* v. *Galloway Female College,* 64 Ark. 627. See also Elliott on Contracts, volume 1, section 228. Many other cases upholding the rule are reviewed in a case note to 17 A. & E. Ann. Cas. at pp. 1076-1078.

There was no consideration for the contract and until the other party incurred some expense, loss, or legal obligation, it did not constitute a binding contract, but was only an offer. An offer without acceptance is not a contract.

The record shows that Jas. P. Blanton died before the terms of the contract were accepted by the town of Forrest City and before that town or the manufacturing companies seeking to benefit by the contract incurred any expense, loss or legal obligations under it. This brings us to the question of whether or not his death amounted to a revocation of the subscription. It is well settled that the acceptance of a subscription is ineffectual unless made during the lifetime of the subscriber. *Grand Lodge, etc.* v. *Farnham,* 70 Cal. 158, 11 Pac. 592; *Pratt* v. *Baptist Soc.,* 93 Ill. 475, 34 Am. Rep. 187; *Twenty-Third St. Baptist Church* v. *Cornell,* 117 N. Y. 601, 23 N. E. 177, 6 L. R. A. 807; *In re Helfenstein,* 77 Pa. St. 328, 18 Am. Rep. 449; Elliott on Contracts, vol. 1, sec. 35, and 39 Cyc. 1189.

In *Pratt* v. *Baptist Soc., supra,* the court said: "Being but an offer, and susceptible of revocation at any time before being acted upon, it must follow that the death of the promisor, before the offer is acted upon, is a revocation of the offer. This is clearly so upon principle. The subscription or note is held to be a mere offer, until acted upon, because until then there is no mutuality. The continuance of an offer is in the nature of its constant repetition, which necessarily requires someone capable of making a repetition. Obviously this can no more be done by a dead man than a contract can, in the first instance, be made by a dead man."

So in the present case the executrix could not create a new liability where none existed before. She has no authority to bind her husband's estate by a contract which had come to an end by his death and thereby convert an invalid promise of her testator into an enforceable liability of his estate. The contract was a one-sided one and being only an offer or promise, as has been often said, the offer or promise died when the one making it died.

Counsel for defendant seek to uphold the decree upon the validity of the probate order wherein the executrix of the estate of Jas. P. Blanton, deceased, was ordered to make a deed to the Merchants & Planters Compress Company. It is claimed that the order was made pursuant to section 213 of Kirby's Digest conferring upon probate courts the power to decree the specific performance of contracts of deceased persons for the sale of real estate in certain instances upon the petition of their executors or administrators.

It is contended that the complaint in the present case is a collateral attack upon that order and is therefore unavailing to the plaintiffs. In determining the validity of a judgment upon collateral attack, a distinction must be observed between those facts which involve the jurisdiction of the court over the parties and subject-matter, and those quasi-jurisdictional facts, without allegation of which the court cannot properly proceed and without proof of which a decree should not be made. The absence

of the former renders the judgment void upon collateral attack. *Whitford* v. *Whitford,* 100 Ark. 63.

In *Oliver* v. *Routh,* 123 Ark. 189, the court said that the authority to grant specific performance of an executory contract to convey land against the executor or administrator of a decedent is a special power conferred upon the probate court by Sections 209-214 of Kirby's Digest. Therefore it was held that the facts essential to the exercise of the special jurisdiction by the probate court must appear upon the record.

The court further held that the probate court is without jurisdiction to render a judgment of specific performance of an executory contract made by the decedent to convey the homestead. The court said that the sections of the digest just referred to contemplate that there should be a valid executory contract to convey land made by the decedent before the probate court can order it to be specifically performed. The court again had occasion to consider this question in *Arkansas Valley Trust Co.* v. *Young,* 128 Ark. 42. In that case the court held that section 213 of Kirby's Digest gives an administrator, with the approval of the probate court, authority to convey land belonging to a decedent to a third party in pursuance of an oral agreement between decedent and the third party where the administrator is satisfied that payment has been made according to the contract.

The court again recognized that the authority given under the statute was a special power to be exercised in a special manner and not according to the course of common law.

In the present case the petition filed in the probate court sets out the written instrument under which the defendant's claim and which we have copied in our statement of facts. This instrument is also recited in the judgment of the probate court as the basis of its action in authorizing and directing the executrix to make the deed and recites that it is done pursuant to the contract in question.

The judgment of the probate court, also, shows that there was no acceptance, either express or implied, by Forrest City or by the Forrest City Manufacturing Company or the Merchants & Planters Compress Company prior to the death of Jas. P. Blanton. As we have already seen the contract lacked mutuality and was therefore unenforceable. The lack of jurisdictional facts appears in the probate judgment, and it is therefore void.

What we have said applies with equal force to the 20 acres claimed by the Forrest City Manufacturing Company, and the same conclusion is reached as to it.

It follows that the decree must be reversed and the cause remanded for further proceedings according to the principles of law and equity and not inconsistent with this opinion.