MERCER *v.* NORTH LITTLE ROCK SPECIAL SCHOOL DISTRICT.

Opinion delivered May 7, 1928.

128

*L. P. Biggs,* for appellant.

*J. F. Wills, Tom F. Digby* and *Carmichael & Hendricks,* for appellee.

HART, C. J., (after stating the facts). It appears from the statement of facts, which need not be repeated here, that the school district advertised and sold the bonds with the following: ''said bonds to be offered unconditionally.'' The bonds were sold unconditionally, and E. M. Ream & Company became the purchaser thereof. The record shows that the bid of the American Southern Trust Company for the bonds was $8,617.60 higher than the bid of E. M. Ream & Company, and that the bid of Brown-Crummer Company was $39,304.70 higher than the bid of E. M. Ream & Company. Hence, it is insisted that one of these bids should have been accepted by the school district. The American Southern Trust Company disclaimed any right in the premises. This leaves Brown-Crummer Company as the contesting bidder. The school district sold the bonds to E. M. Ream & Company because

it made an unconditional bid, and this was in accord with the resolution of the school board relating to the sale of the bonds and with the advertisement pursuant to the resolution.

The bid of the American Southern Trust Company contained a provision that the check attached to the bid was not to be cashed until the bonds were delivered with the approving opinion of J. B. McDonough of Fort Smith, Arkansas, whose fee the bidder agreed to pay. The bid of the Brown-Crummer Company also contained a provision that the school district was to furnish it with the approving opinion of Mr. J. B. McDonough or of Rose, Hemingway, Cantrell & Loughborough, and was also to have the bonds certified and trusteed. Thus it will be seen that both of these bids were conditional. According to Bouvier's Law Dictionary, bidding, in its comprehensive sense, is making an offer; but, in its ordinary sense, it is signifying the making of an offer at an auction. The language referred to in both bids plainly shows that the offer made by each bidder was conditional. The bid of Ream & Company, who became the purchaser of the bonds, was an unconditional bid in accordance with the proposition and advertisement of the school board. The board properly accepted the proposition made in accordance with the terms of the resolution and advertisement of the sale of the bonds, provided it acted in good faith in the premises.

In *Trowbridge* v. *City of New York,* 53 N. Y. Supp. 616, it was held that a bid for municipal bonds, containing the clause, "Our bid is to be subject to the approval of the legality of the issues by our counsel," is a conditional bid.

This view is in accordance with our own holding on the question. In *Bank of Eastern Arkansas* v. *Bank of Forrest City,* 94 Ark. 311, 126 S. W. 837, the court held that a county depository act which directs that the county court shall advertise for sealed bids and shall select as depository of the county funds the bidder offering the highest rate of interest on such funds, con-

templates an unconditional offer, and that a bid whereby the bidder offered to pay a certain percentage more on the funds than the highest and best bid that should be made by any other bidder should not be received.

Again, in *Casey* v. *Independence County,* 109 Ark. 11, 159 S. W. 24, it was held in a similar case that an offer from a bank whereby it agreed to pay a certain per cent. more on county funds than any other bid received was not such a bid as the statute contemplated.

In *Grant County Bank* v. *McClellan,* 112 Ark. 550, 166 S. W. 550, the court said there can be no real competition unless all bidders are required to bid upon the same basis and that no proposition can be considered to be a bid unless it is complete in itself as declared by the courts. Hence, it was again held that where a bank seeking to become the depository of county funds proposed to pay a certain per cent. more than any other bid offered, this did not constitute a bid, for the reason that it could not be acted upon alone without reference to anything outside of itself.

In the present case, E. M. Ream & Company was a client of J. B. McDonough, a well-known bond lawyer, and had secured his approving opinion based upon an examination of the records of the school district. While Ream & Company exhibited this approving opinion to the school board, the latter had no control over the opinion and had no right to deliver it to other bidders to be used by them in making their bids. McDonough expressly testified that the opinion had been sent to be used by E. M. Ream & Company, and that no other person had a right to use it. Hence, the other bidders not only made conditional bids, but attached to their bids a condition which could not be honorably complied with by the officers of the school board. They could have, under the circumstances, no right whatever to use McDonough's opinion for the benefit of other bidders than E. M. Ream & Company, for which the opinion was made and which alone had the right to make use of it.

This brings us to a consideration of whether there was any fraud practiced by the school board in selling the bonds to E. M. Ream & Company. The record shows that it was first agreed that the bonds should be sold at auction, and that the approving opinion of a nationally known bond attorney should be procured by E. M. Ream & Company for the benefit of all who might bid at the public sale of the bonds. Later, E. M. Ream & Company reported to the school board that such an approving opinion could not be secured without causing much delay in the sale of the bonds. The school board then decided to rescind its original contract with E. M. Ream & Company and to make an unconditional sale of the bonds. This it had a right to do if it acted in good faith in the matter, and if there was no fraud or collusion between the school board and E. M. Ream & Company in the premises. There is nothing in the record to indicate fraud or collusion of the school board with E. M. Ream & Company, unless two circumstances, which we shall now proceed to discuss, amount to fraud or collusion.

In the first place the advertisement for the sale of the bonds was made in the twice-a-week Gazette instead of the daily Gazette or some other daily paper. The record shows that the twice-a-week Gazette has a *bona fide* circulation in Pulaski County, where the bonds were to be sold. It is suggested that the daily Gazette or some other daily paper might have a greater circulation. This is not sufficient to show fraud or collusion. The record shows that all the parties who wished to bid knew about the sale and were given an opportunity to bid. The record does not show why the advertisement was made in the twice-a-week Gazette, but perhaps it was done because it was cheaper, and the school district knew as a matter of fact that all persons who wished to bid had actual knowledge of the time, place and terms of the sale. Indeed, the proceedings of the school board were public records, and, as such, were accessible at all reasonable times to any interested person.

Again, it is submitted that there was fraud or collusion between the officers of the school board and Ream & Company because the bid of Brown-Crummer Company amounted to $39,304.70 more than the bid of Ream & Company. As we have already seen, the bid of Brown-Crummer Company was made upon the express condition that the school board should furnish it with the approving opinion of Mr. James B. McDonough or of Rose, Hemingway, Cantrell & Loughborough, and also upon the condition that the bonds be certified and trusteed. If this contention should be sustained, the practical effect would be that a bidder could change the method of sale from an unconditional to a conditional one. This might not be to the advantage of the district. The officers of the school district were public officers, and, as such, are accountable for any breach of trust. The bidder at the sale is accountable to no one. He might make a conditional or an unconditional bid, just as he liked. In the present case the bidder must have known that the sale was to be unconditional, and yet made a conditional bid. The bidder knew that the sale was unconditional. He might have secured the opinion of any lawyer he liked. The school district was not interested in what lawyer approved the bonds for the bidders. It cannot be said that the making of a conditional bid, when an unconditional sale was advertised, showed fraud because the unsuccessful bidder bid $39,304.70 more than the successful bidder.

We are of the opinion that there is not sufficient evidence in the record to justify us in finding that the officers of the school district acted in bad faith or acted fraudulently or collusively with E. M. Ream & Company, the successful bidder, in making the sale of the bonds.

Therefore, the decree will be affirmed.

Justices Wood, Kirby and Mehaffy dissent.