GIBSON *v.* BOYD.

Opinion delivered July 12, 1943.

*McMillan & McMillan,* for appellant.

*Arnold & Arnold,* for appellee.

McHANEY, J.   Appellees, husband and wife, for a number of years, have been tenant farmers, renting and

cultivating the 40-acre tract of land in Hempstead county, here involved, belonging to appellant, C. A. Gibson, whose wife is a party to this litigation. On December 9, 1941, appellant, through his agent, Giles H. Gibson, wrote Jim Boyd the following letter: "Please leave the rent for the cotton and seed, one-third with a statement of same at Jack's Newsstand in Hope. Mr. Barr will give you a receipt.

"Also if you want to stay where you are you will have to buy it for $300. To do this it will be necessary that you leave $5 every Friday (pay day) at the newsstand as long as you work on the proving ground, Then $50 and interest on Nov. 1st each year until the full amount is paid.

"If you do not want to do this let me know at once, and be ready to give possession by Jan. 1st as I have another party who wants it."

Boyd received this letter promptly, for on December 12, three days later, he went to Jacks Newsstand in Hope and paid Mr. Barr $12.95 for rent as directed in said letter, and, although he was working at the Proving Ground at the time, making $24 per week and so continued through January 31, 1942, he did not make any of the $5 payments "every Friday (pay day) at the newsstand as long as you work at the Proving Ground." Nor did he communicate with appellant's agent until about March, 1942, when they met on the streets of Hope and had a conference, and the evidence as to what occurred then is in dispute. The agent said they made a rent agreement for 1942, which is denied by Boyd. Prior rental contracts had been in writing, but no written contract was made for 1942. Boyd does admit that he never advised the agent that he was claiming to have purchased the land until November of that year, after the land had become valuable for possibilities for oil. In September, 1942, one Matthews went to Boyd to lease the land for oil and gas, found that Boyd had no title, only the above letter, and undertook to clear the title, if Boyd would give him an oil and gas lease on the land. Pursuant to this arrangement, on October

3, 1942, Matthews wrote said agent a letter, enclosing a draft for $300 drawn on himself, and asked that a deed to the land be attached to the draft and deposited for collection. The deed was not executed and the draft was returned by said agent some time later.

Appellees brought this action for specific performance based on said letter. Trial resulted in a decree awarding the relief prayed, and this appeal followed.

We think the court erred in so holding for several reasons, but one is sufficient. The offer to sell as set out in said letter stated the terms and conditions of the offer. These included a price of $300, and a payment of $5 every Friday, which was pay day, so long as he should work on the Proving Ground. This letter was dated December 9, 1941, which was Thursday, and was mailed at Fayetteville. Not counting Friday, December 10, there were three more Fridays in December, 1941, and five in January, 1942, during all of which time Boyd worked at the proving ground, earning $24 per week, and he did not make one $5 payment. Had he made these eight payments of $5 each, which the writing said were "necessary," if he wished to buy, there would be some basis for a holding that the offer to sell was accepted; or if he had made one of them, it would be evidence of an acceptance. We think these payments were conditions precedent and, in this sense, time was of the essence of the proposed contract. It is elementary in the law of sales contracts that there must be an offer and an acceptance before there can be a contract. As to vendor and purchaser of real property it is said in 66 C. J. 520, § 56: "In order that an offer to sell or purchase real property may result in a binding contract, it is essential that there be a valid acceptance." Our own cases of *Blanton* v. *Forrest City Mfg. Co.*, 138 Ark. 508, 212 S. W. 330, and *Pond-Decker Lumber Co.* v. *Wilson*, 71 Ark. 644, 74 S. W. 295, are cited to support the text. Therefore, the offer not having been accepted in the manner required by its own terms, no valid contract was ever made between the parties and specific performance cannot lie to perform a contract that never did exist.

While what we have said is sufficient to dispose of this case, we cannot agree with learned counsel for appellees that either the fact that they continued in possession without a written lease agreement and made some small improvements, or that said agent held the Matthews draft for some two or three months without returning it, can have the effect contended, that is to estop appellants from asserting that there was no valid or binding contract. It appears to us that but for the oil activity in the vicinity and the consequent increase in the value of the land, this lawsuit would never have arisen. Moreover, there was no mutuality of obligation. On the record here presented, Boyd could not have been held to perform.

The decree will be reversed and the cause remanded with directions to dismiss the complaint for want of equity at the cost of appellees.