2010 Ark. App. 545

**Rinaldo GRISANTI and Tuscan Hill, Inc., Appellants,**

**v.**

**George ZANONE III, et al., Appellees.**

**No. CA 08–63.**

Court of Appeals of Arkansas.

July 1, 2009.

Rieves, Rubens & Mayton, by: Kent J. Rubens, West Memphis, for appellants.

Sharpe, Beavers, Cline & Wright, by: Brad J. Beavers, R. Alan Cline, and Marshall Wright, Forrest City, for appellees.

WAYMOND M. BROWN, Judge.

Appellant Rinaldo "Ronnie" Grisanti[1] appeals from the order of the Crittenden County Circuit Court finding that he had not proved by clear and convincing evidence all of the elements of an oral lease of real property owned or controlled by appellees George Zanone, III; Zanone Plantation, J.V.; Zanone Properties, LLC; Zanone–Pitts, LLC; Leatherman Farms, LLC; Shea Leatherman; William Leatherman; and Irwin Leatherman. This resulted in the failure of Grisanti's action for specific performance, and Grisanti appeals. Despite having found that Grisanti had failed to prove a key element of his claim by clear and convincing evidence, the circuit court awarded him $14,000 for improvements made to the real property on the basis that appellees were unjustly enriched by the improvements. Appellees cross-appeal from this award. We affirm on direct appeal and on cross-appeal.

Appellees control approximately 7,100 acres of land in eastern Arkansas. Prior to 1998, George Zanone, III, operated a duck-hunting club on these lands under the name of Green River Gun Club. Later that year, Zanone's family wanted him to

---

1. Tuscan Hill, Inc., an entity formed by Grisanti to sublease the property from the appellees is also an appellant in this action. For ease of writing, unless the context requires otherwise, we will refer to Grisanti as if he were the sole appellant.

become more involved in the family farming business as farm manager. He sought out Grisanti, a member of his club, to discuss the future of the club hunting on this property.

In February 1999, Zanone, acting individually and as agent for the other appellees, met with Grisanti, Brian Loudermilk, Walter Montgomery, and Ed Couples for purposes of negotiating a lease for the hunting rights to appellees' property. The meeting occurred at the "hill house," which is also described as the Indian Mound house. There were discussions as to the term of the lease, the annual rent, a royalty to be paid to Zanone, additional monies to be paid to Zanone, what game could be hunted, and the hunting rights retained by Zanone and his family. There were also discussions about improvements Grisanti would make to the buildings on the property and whether he would be reimbursed for those improvements. In the belief that the parties had an agreement, Grisanti tendered $10,000 to Zanone in May 1999 and another $10,000 on or about September 1, 1999. Grisanti also made improvements to the property and prepared the fields for dove hunting. Prior to the September 1999 dove season, Zanone informed Grisanti that he was bringing a large number of guests to hunt on the first day of dove season. Grisanti objected, stating that this would interfere with the hunting rights he leased from appellees because his members could not hunt until the next day. After the dispute arose, payment of the second check for $10,000 was stopped by Grisanti.

On August 8, 2000, Grisanti filed his complaint alleging that appellees breached the lease and seeking specific performance of the lease or damages. Appellees answered, denying the material allegations of the complaint and asserting the statute of frauds as an affirmative defense.

After a trial that was spread out over nineteen months and after receiving post-trial briefs, the court entered its decree containing extensive findings of fact and conclusions of law on June 18, 2007. The decree also stated which facts were found by clear and convincing evidence and which were established by a preponderance of the evidence. Essentially, the court found that the amount of the rent, the additional payments for supportive services such as pumping water and leaving grain in the fields, the extent of the property subject to the agreement, the royalty payment to Zanone, the term of the lease that Grisanti would be allowed to operate the hunting club as long as appellees were farming the land, and the term that the hunting club would not be allowed to hunt deer were established by clear and convincing evidence. The court also found that some material terms of the lease, such as the hunting rights retained by Zanone, were not established by clear and convincing evidence. Because these terms failed, Grisanti's cause of action failed. The court also found that, although the hill house was livable prior to the time of the agreement, Grisanti had made substantial improvements to the hill house of at least $14,000 in the belief that there was an agreement. The court found that these improvements benefitted appellees and ordered them to pay Grisanti $14,000 in restitution. This appeal and cross-appeal followed.

Grisanti first argues that the circuit court erred in finding that he did not meet his burden to prove all of the terms of the oral lease. A lease of the right to hunt and fish is an interest that comes within the statute of frauds. *State v. Mallory*, 73 Ark. 236, 83 S.W. 955 (1904). Our statute of frauds prohibits the enforcement of oral leases for more than one year. Ark.Code Ann. § 4–59–101(a)(5) (Repl.

2001); *Norton v. Hindsley*, 245 Ark. 966, 435 S.W.2d 788 (1969). To take an oral contract out of the statute of frauds, the making of the oral contract and its performance must be proved by clear and convincing evidence. *Stewart v. Stewart*, 72 Ark.App. 405, 37 S.W.3d 667 (2001). The test on review is not whether this court is convinced that there is clear and convincing evidence to support the circuit court's finding, but whether we can say that the finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Davis v. Davis*, 48 Ark. App. 95, 890 S.W.2d 280 (1995).

■ In the instant case, Grisanti has the burden of proving the existence of a contract. |₅*Thompson v. Potlatch Corp.*, 326 Ark. 244, 930 S.W.2d 355 (1996). We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made, and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 289 S.W.3d 466 (2008). The circuit court found that not all of the material terms of the oral agreement were established by clear and convincing evidence. There was testimony that Grisanti wanted a long-term lease and that he proposed a two-year lease with a five-year option. However, there was testimony that, because of the uncertainty of farming, Zanone could not grant a long-term lease but would consider future leases after the first season. Further, there was no evidence showing when or how any renewals would be exercised, or what would happen if the Zanone family decided to stop farming prior to the end of the

lease, which the circuit court found that they did after 2001. One witness present at the February 1999 meeting testified that he understood that the parties would have to agree every year for the lease to continue. Likewise, the issue of the retained hunting rights was uncertain. Although it is not disputed that appellees retained their hunting rights, it is not clear the extent to which those rights were to be subordinated to the rights being leased to Grisanti. It was also not clear how many "guests" the Zanone family could bring to hunt with them. Given our standard of |₆review, we cannot say that the circuit court was clearly erroneous in finding that all of the terms of lease had not been proven by clear and convincing evidence.

■ We discuss Grisanti's second point on appeal in conjunction with appellees' sole point on cross-appeal as both involve the circuit court's award of restitution for improvements Grisanti made to the property under an unjust enrichment theory. Grisanti argues that the award is too small, while appellees argue that there should not have been any award because the improvements did not benefit them.

We find that there is ample evidence to support the circuit court's finding. There was testimony that appellees agreed to reimburse Grisanti for improvements to make the hill house liveable. Some improvements were made for the 1998 duck season, and it is not disputed that the house was liveable by the time the February 1999 meeting was held. There was also testimony that Grisanti went beyond making the house liveable by installing new paneling, counter tops, appliances, and other furnishings. Other testimony established that some work was done to improve the property, such as repairing the rutted driveway to the house with gravel and establishing feed plots to draw game to the property. Grisanti testified

that he had spent over $30,000 in improvements for the property and house. Zanone acknowledged that good hunting could increase the value of the property.

 In general, recovery for unjust enrichment is based upon what the person enriched has received rather than what the opposing party has lost. *Sanders v. Bradley County Human Servs. Pub. Facilities Bd.*, 330 Ark. 675, 956 S.W.2d 187 (1997). The issue of unjust enrichment is a question of fact. *Wilson v. Lester Hurst Nursery, Inc.*, 269 Ark. 19, 598 S.W.2d 407 (1980). We cannot say that the circuit court was clearly erroneous in finding that appellees benefitted by Grisanti's improvements or in the amount of the award.

 For his third point, Grisanti argues that the circuit court abused its discretion in not awarding him his attorney's fees pursuant to Arkansas Code Annotated section 16–22–308. We cannot discern that Grisanti filed a motion or otherwise requested an award of fees. He did not include a specific prayer for attorney's fees in his complaint. A party will not be heard to complain on appeal that the circuit court did not grant him a particular kind of relief if he did not request it. *Jones v. Abraham*, 341 Ark. 66, 15 S.W.3d 310 (2000). Moreover, the circuit court did not specifically rule on the issue. The burden of obtaining a ruling from the court is on the party requesting such fees, and matters left unresolved below are waived and may not be relied upon on appeal. *Crockett & Brown, P.A. v. Courson*, 312 Ark. 363, 849 S.W.2d 938 (1993).

Affirmed on direct appeal; affirmed on cross-appeal.

ROBBINS and GRUBER, JJ., agree.