RAYMOND R. ABRAMSON, Judge
This lawsuit arises out of an online auction to sell certain real property located at 901 South Main Street in Mountain Home, Arkansas. The overarching issue presented in this appeal is whether Freeman Holdings of Arkansas, LLC, and Francis B. Freeman, Jr., (Freeman) formed an enforceable contract with FNBC Bancorp, Inc. (FNBC), to purchase the property. The circuit court found that an enforceable contract existed between the parties and ordered specific performance. We affirm.
I. Background
FNBC sought to sell certain real property located at 901 South Main Street in Mountain Home, Arkansas. FNBC hired Wooley Auctioneers (Wooley) to administer an online auction to sell the property and gave Wooley the exclusive right to offer the property for sale. In the course of Wooley's representation of FNBC, Wooley drafted the documents for the online auction, and FNBC accepted those documents as its own.
Freeman was interested in purchasing the property. Freeman authorized its agent, Raymond Mikesch, to conduct research on the auction and bid on the property. It is undisputed that Mikesch had authority to act on Freeman's behalf.
Before the auction, Mikesch perused Wooley's website to familiarize himself with it. Then, on April 27, 2016, the date of the auction, Mikesch logged on to Wooley's website and registered to bid. Mikesch was required to accept the terms and conditions of the auction when he registered to bid on the property. Thereafter, he made thirteen separate bids to purchase the property. At the conclusion of the auction, he was informed that he had placed the highest bid-$52,000.
The terms and conditions agreed to by Mikesch would prove to be integral to the future litigation. They provide in part as follows:
TERMS TO PURCHASE REAL ESTATE: Successful Purchasers Will Be Required To Tender A Cashier's Check In The Amount Equal To 20% Of Contract Purchase Price To The Respective Title Company(s) Within 48 Hours After Acceptance By The Bank, Along With A Signed Copy Of The Offer & Acceptance Agreement That Will Be Emailed To *184 You Immediately After Acceptance By The Bank. The Balance Will Be Due In Approx. 30 Day [sic] At Closing. The Purchaser Will Pay The Buyers Side Of The Closing Costs And All Taxes Will Be Prorated To The Date Of Closing.
The terms and conditions also specify that a 10 percent buyer's premium will be added to the bid to determine the final sales price and refer to a "sample" offer-and-acceptance agreement, which is not included in the record and may not have existed at the time Mikesch placed bids on behalf of Freeman. Finally, the terms and conditions indicate that "your bid is a contract to buy" and that all property is sold "as is."
After Mikesch learned that Freeman had placed the highest bid for the property, he called Wooley and was informed that FNBC had to accept its bid. Mikesch admitted that he was later notified that FNBC had accepted the bid. Thereafter, Wooley allegedly sent Mikesch an email that attached the auction contracts, including the offer-and-acceptance agreement. Importantly, the offer-and-acceptance agreement merely reiterated the terms and conditions to which Freeman had agreed and incorporated the exact monetary amount Freeman offered to pay. Specifically, the offer-and-acceptance agreement specified the bid price offered by Freeman-$52,000. The document then calculated the 10 percent buyer's premium-$5200; the total purchase price-$57,200; the down payment-$11,440; and the balance due at closing-$45,760. Mikesch contends that he did not receive Wooley's email. Two months passed, and Freeman never paid any of the money due according to the terms and conditions of the auction, nor did it sign the offer-and-acceptance agreement. Freeman never closed on the sale of the property.
Freeman's refusal to close on the property was based on perceived problems with it. After the auction, Freeman inspected the property, which led it to conclude that the building's pipes had burst. Freeman declined to go forward with its purchase because it believed that the property had not been adequately protected and would require considerable expense to repair the pipes.
II. The Litigation
In August 2016, FNBC sued Freeman for breach of contract and sought specific performance of the contract. Freeman mounted several defenses to the lawsuit, including that the alleged contract was unenforceable because it did not satisfy the statute of frauds.
The circuit court held a bench trial in October 2017. At trial, the terms and conditions of the auction were introduced into evidence. Mikesch admitted that he saw, reviewed, and accepted the terms and conditions for the auction, that he placed bids on the property, and that he knew FNBC had accepted Freeman's highest bid to purchase the property.
After the trial, the circuit court issued a judgment in favor of FNBC and ordered specific performance of the contract. In the judgment, the circuit court found that "a contract was formed ... with adequate consideration and mutual obligation." It further found that "the statute of frauds [wa]s unavailable as a defense, because the material aspects of the contract were admitted under oath by representatives of Freeman Holdings." Freeman timely appealed to our court.
III. Issues on Appeal
On appeal, Freeman contends that the circuit court's order requiring specific performance must be reversed and argues that (1) the circuit court improperly applied *185 the judicial-admissions doctrine, (2) the alleged contract did not satisfy the statute of frauds, (3) there was no contract, and (4) it did not admit all material terms of the alleged contract.
Based on our review, we hold that the parties entered into a contract that satisfied the statute of frauds; consequently, we affirm the circuit court's judgment without reaching the merits of Freeman's remaining points on appeal.
IV. Whether There Is A Contract
We begin our analysis of this appeal with the most fundamental inquiry in contract law: whether Freeman and FNBC had a contract. It was FNBC's burden to prove the existence of a contract. Grisanti v. Zanone , 2010 Ark. App. 545, 336 S.W.3d 886.
The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. Bank of the Ozarks, Inc. v. Walker , 2016 Ark. 116, 487 S.W.3d 808. Our review of whether the circuit court erred by finding there was a contract is limited to whether the finding was clearly erroneous. Robinson v. Villines , 2009 Ark. 632, 362 S.W.3d 870.
Certain essential principles apply to the formation of a contract. Very simply stated, a contract requires an offer and an acceptance. Gibson v. Boyd , 206 Ark. 48, 50, 172 S.W.2d 928, 929 (1943). An auction is an invitation to offer. See Mercer v. N. Little Rock Special Sch. Dist. , 177 Ark. 127, 132, 6 S.W.2d 16, 18 (1928). And in an auction, a bid constitutes the making of an offer. Id. Offers may be accepted either by spoken words or by conduct. Van Dyke v. Glover , 326 Ark. 736, 934 S.W.2d 204 (1996).
Freeman clearly made an offer to purchase the property when it placed its bids during the auction. FNBC was free to accept or reject that offer, which was evident from the telephone call between Wooley and Mikesch wherein Mikesch learned that Freeman was the highest bidder but that FNBC had to accept Freeman's offer. Ultimately, FNBC accepted Freeman's offer, which was conveyed to Mikesch through a subsequent telephone call.
Based on these facts, we are charged with determining whether FNBC's acceptance created a binding contract for the purchase and sale of the property. Freeman contends that it did not. The lynchpin of Freeman's argument for reversal is that there was no mutual agreement because the terms and conditions it agreed to did not include the offer-and-acceptance agreement, which was to be emailed after FNBC's acceptance of its bid. Essentially, Freeman argues there was no meeting of the minds.
It is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. DaimlerChrysler Corp. v. Smelser , 375 Ark. 216, 289 S.W.3d 466 (2008). Both parties must manifest assent to the particular terms of the contract; thus, the terms of the contract must be effectively communicated. Asset Acceptance, LLC v. Newby , 2014 Ark. 280, 437 S.W.3d 119. This includes a requirement that the contract cannot be so vague as to be unenforceable. DaimlerChrysler Corp., supra. Terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. Id.
We are reminded that whether there was a meeting of the minds is an issue of fact, and we will not reverse a circuit court's finding of fact unless it is clearly erroneous. Id. In this instance, we *186 cannot say that it is. The unsigned offer-and-acceptance agreement that Freeman contends negated the existence of the contract merely supplied the terms and conditions to which Freeman agreed and included the exact monetary amounts Freeman offered to pay. It did not contain new terms nor did it vary any terms previously agreed to by the parties. There is evidence to support a finding that both Freeman and FNBC manifested assent to the terms of the contract. It was not erroneous for the circuit court to find that there was a meeting of the minds on all terms. Accordingly, we hold that the circuit court did not err by finding that Freeman and FNBC had entered into a contract.
V. Whether the Contract Satisfied the Statute of Frauds
Having determined that Freeman and FNBC did, in fact, enter into a contract, we now direct our analysis to whether that contract is enforceable. Generally, the statute of frauds requires that contracts for the sale of land be in writing to be enforceable. Ark. Code Ann. § 4-59-101(a)(4) (Supp 2017).
We begin by acknowledging that the circuit court did not specifically rule on whether the contract satisfied the statute of frauds. The pertinent portion of the judgment provides that "a contract was formed,"[1] and that "the statute of frauds is unavailable as a defense because the material aspects of the contract were admitted under oath." Despite the absence of a ruling on this particular question, our court "may affirm a circuit court where it has reached the right decision, albeit for the wrong reason, so long as the issue was raised, and a record was developed below." Ark. State Bd. of Election Comm'rs v. Pulaski Cty. Election Comm'n , 2014 Ark. 236, at 12, 437 S.W.3d 80, 87.
Whether this contract satisfied the statute of frauds was clearly litigated before the circuit court. With this in mind, we next determine whether the statute of frauds was satisfied because this inquiry is the next logical step in the analysis of the enforceability of this contract, and its determination disposes of the litigation.
To comply with the statute of frauds, a writing must contain in itself, or by reference to another writing, all essential terms. Van Dyke , 326 Ark. 736, 934 S.W.2d 204. Specifically, a contract for the sale of real property must include (1) the terms and conditions of the sale, (2) the price to be paid, (3) the time for payment, and (4) the land to be sold. Id. at 743, 934 S.W.2d at 208.
Here, the written contract is composed of two documents: the terms and conditions to which Freeman agreed when it bid on the property and its electronic bids.[2] Notwithstanding these terms, Freeman argues that the contract fails to satisfy the statute of frauds because all essential terms of the contract are not reduced to writing. On appeal, it advances two primary arguments in support of reversal, asserting that the terms and conditions did not identify FNBC as the seller and that the terms and conditions did not include the offer-and-acceptance agreement.
*187 First, we address whether the offer-and-acceptance agreement contained essential terms that were absent from the written contract. On this point, we reiterate that the offer-and-acceptance agreement merely supplied the exact monetary amount that Freeman offered to pay FNBC for the property and restated the written terms and conditions. Because the offer-and-acceptance agreement did not introduce or vary any essential terms, its absence from the written contract does not result in a failure to satisfy the statute of frauds.
Next, we analyze whether FNBC's status as the seller is an essential term that was absent from the contract. We acknowledge that the terms and conditions provide that "the bank" must accept any offer. Although FNBC was not specifically identified in the terms and conditions, the property description on Wooley's website identifies FNBC as the seller and provided that keys to preview the property were available at FNBC. Additionally, we recognize that Wooley was FNBC's agent for this auction. The contract between Wooley and FNBC provided that Wooley had the exclusive right to offer the property for sale, and Wooley was identified on both the terms and conditions and on Freeman's bids. Thus, we hold that this contract does not fail to satisfy the statute of frauds based on the failure to identify FNBC as the seller.
In summation, we hold that this contract satisfies the statute of frauds and is therefore enforceable. The written terms and conditions of this auction were sufficient to put Freeman on notice as to how the auction would be conducted and to the obligations imposed on it by placing a bid.
VI. Conclusion
Because we hold that Freeman and FNBC entered into a contract for the sale of land that satisfied the statute of frauds, we affirm the circuit court's judgment without the necessity of reaching the merits of Freeman's remaining arguments on appeal.
Affirmed.
Virden and Hixson, JJ., agree.

A finding that a contract exists is not a finding that the statute of frauds is satisfied. The statute of frauds provides that in order to be enforceable, certain contracts must be in writing. Ark. Code Ann. § 4-59-101(a)(4).

Because the terms and conditions and Freeman's bids were executed contemporaneously by the same party in the course of the same transaction, the instruments are considered one contract for the purposes of interpretation. See Byme, Inc. v. Ivy , 367 Ark. 451, 241 S.W.3d 229 (2006).