Cite as 2022 Ark. App. 136

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-19-660

|  |  |
|---|---|
| PATTY JACKSON, AS EXECUTRIX OF THE ESTATE OF TOMMY WILLIAMS; AND VELA WILLIAMS<br><br>APPELLANTS<br><br>V.<br><br>RONNIE CRUMP<br><br>APPELLEE | Opinion Delivered March 30, 2022<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, EASTERN DISTRICT [NO. 16LCV-16-34]<br><br>HONORABLE DAN RITCHEY, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

This case is a companion to *Jackson v. Crump*, 2022 Ark. App. 137, also handed down today. In both cases, Vela and Tommy Williams (the Williamses) appeal the circuit court's orders granting specific performance of an option for the purchase of real property in favor of appellee Ronnie Crump (Crump).[1] The Williamses argue that both options violate the statute of frauds and are unenforceable. They also argue other different points in each case. We affirm.

---

[1]Tommy Williams died on June 2, 2020. Patty Jackson was duly appointed the executrix of Williams's estate by order of the Mississippi County Circuit Court on September 9, 2020. Jackson, as executrix, was substituted as an appellant by order of this court on November 4, 2020.

I. *Background*

In March 2006, the Williamses purchased a 320-acre tract of farmland from Lillian Crump. The Williamses were to pay $640,000 at the time of execution of the contract of sale and an additional $160,000 no later than ten years after the closing of the sale. The Williamses granted a second mortgage in favor of Ms. Crump to secure payment of the $160,000.[2] The warranty deed for the sale was recorded on March 24, 2006. As additional consideration for the sale, Ms. Crump required that the Williamses execute a lease to her son, Ronnie Crump, for the property. She also required the Williamses to grant Crump an option to purchase the property.

The purpose of the option was to allow Crump to keep the property in the family if he chose to do so. The option provided as follows:

> 1. Notification date is defined as not earlier than TEN YEARS after the date of the recording of a deed conveying the above described property from LILLIAN CRUMP to TOMMY AND TODD WILLIAMS and not later than 30 days after that date.[3] This Option is to be considered personal to Optionee and his rights under this agreement may not be assigned to any other party.

> 2. Exercise of Option. If on or before midnight of notification date, the Grantee shall notify Grantors of Grantee's election to exercise the option hereby granted by ordinary mail, postmarked prior to the deadline indicated and addressed to Grantors . . ., a contract shall thereupon result in which the Grantor agrees to sell and Grantee agrees to purchase the above-described property for the price, on the terms and subject to the conditions herein set forth. In the event that notice in accordance with the terms hereof of the election by the Grantee to exercise the option

---

[2]The second mortgage stated that it was inferior to a March 2005 mortgage Lillian Crump had granted to Unico Bank.

[3]The identity of Todd Williams is not explained.

herein granted is not given within the time indicated, this option shall at once cease and terminate and the Grantee shall have no further rights hereunder.

2[sic]. Purchase Price. The purchase price of the above-described property is SIX HUNDRED, FORTY THOUSAND DOLLARS or the total amount paid by TOMMY and TODD WILLIAMS to LILLIAN CRUMP or her heirs or successors which has been paid at the time of the exercise of this option, whichever amount is greater.

[4]. Title Documents. Upon the exercise of this option within the specified time by the Grantee, the Grantor shall provide to the Grantee as promptly as possible a commitment for title insurance, without exceptions other than for current taxes, for merchantable fee simple absolute title to the lands described above. If other exceptions are noted, the Grantor, the Grantor [sic] shall have a reasonable time within which to cure the same. In the event the Grantee does not assert any material defects in the title offered, or if the title is found to be acceptable to the parties, a closing date shall be set for a time mutually agreeable to the parties, but not later than ten (10) days following the expiration of the length of time necessary to cure said objectionable defects. In the event that the title is not found to be merchantable and the defects therein are not cured by the Grantor within a reasonable time, the Grantee shall have the right and option to cancel and terminate the then-existing contract for the purchase of the property and to be refunded the amount paid for the option, BUT SHALL ALSO BE ENTITLED TO SPECIFIC PERFORMANCE and/or consequential damages for failure of Grantor(s) to deliver merchantable title.

[5]. Closing. On the closing date, the Grantor shall make, execute and deliver to the grantee a Warranty Deed in proper form conveying a merchantable fee simple absolute title to the property under consideration subject only to liens for subsequent taxes[.] The purchase price shall be paid, in cash, at the closing by the Grantee to the Grantor.

Lillian Crump died in December 2010.

On March 28, 2016, Crump notified the Williamses of his exercise of the option. The Williamses responded through counsel with some questions concerning the identity of Lillian Crump's heirs, the Williamses' final payment for the purchase of the property, and Crump's financial ability to perform. A closing never occurred.

3

## II. *The Litigation*

Crump filed suit on December 8, 2016, for specific performance to require the Williamses to convey the property to him. The Williamses answered, denying the material allegations and asserting that it was impossible to convey clear title as originally agreed. The Williamses also pled the statute of frauds as an affirmative defense.

The two companion cases proceeded on parallel tracks. There were several disputes about the Williamses' cooperating and answering discovery, and Crump filed several motions to compel. During these earlier disputes, the circuit court awarded Crump $2,500 in attorney's fees as a sanction for discovery violations in both cases. Finally, in November 2018, the circuit court issued similar orders on the outstanding discovery disputes in both cases. The court found that the Williamses did not file timely responses to the discovery and had not acted in good faith in complying with earlier discovery orders. The court did not strike the Williamses' answer but said it would reconsider if there were further discovery violations. The court imposed other sanctions, including limiting the Williamses to using witnesses and documents already identified in the discovery responses.

On January 18, 2019, Crump moved for summary judgment seeking specific performance. He asserted that the purchase price was $640,000; that he was ready, willing, and able to purchase the property; that the Williamses failed to convey the property after he had provided notice of the exercise of the option; and that he was entitled to specific performance because of the Williamses' breach for failure to close.

The Williamses responded to the motion for summary judgment by arguing that the option was invalid and unenforceable because an option is merely a unilateral contract. They further argued that the option failed to satisfy the statute of frauds, and even if it did, it was unenforceable because it failed to include seven other terms they deemed essential. Attached to the response was a letter from their attorney to Crump's attorney asking for an approval letter for the amount of $640,000 from Crump's lender.

On March 12, 2019, a hearing was held on the motions for summary judgment in both cases. At the conclusion of the hearing, the court ruled from the bench and granted Crump's motion for summary judgment. The court found that Crump had properly and timely exercised his option, and, when he did so, a contract of sale was formed. The court further found that the option did not violate the statute of frauds because the option contained the essential and necessary terms and conditions of the sale. The court also found that the questions raised by the Williamses were either covered in the option or were immaterial. The Williamses were ordered to provide Crump with a commitment of title insurance within fifteen days and to make, execute, and deliver a warranty deed at a mutually agreeable closing date within fifteen days of providing the title insurance commitment. All other issues, including consequential damages, were reserved. The court's order memorializing its bench ruling was entered on March 20, 2019.

The Williamses delivered the title commitment on April 2, 2019.

On April 8, the Williamses filed a motion seeking an Arkansas Rule of Civil Procedure 54(b) certificate from the circuit court because the order on summary judgment was not final due to the reserved issues.

On April 12, the court held a hearing on the Williamses' motions for a Rule 54(b) certificate and to stay the proceedings. By order entered on May 6, the court denied the motions. The court found that granting a Rule 54(b) certificate would actually lead to further delay and result in piecemeal litigation. By separate order entered the same day, the court amended its order granting summary judgment in certain respects. First, the court adopted the legal description contained in the option. The court found that the purchase price was $640,000 and that there was no good-faith basis for the Williamses to argue otherwise because they did not dispute that figure in the response to Crump's motion for summary judgment.

On May 9, the court entered a judgment awarding Crump the sum of $180,000 ($90,000 each year for the years 2017 and 2018) as consequential damages jointly and severally against the Williamses. Crump was allowed fourteen days to file his motion for attorney's fees. Finally, the court held that the judgment awarding damages resolved the last issue left outstanding in the order awarding summary judgment as amended.[4] This appeal followed.

---

[4]Crump timely filed a motion seeking attorney's fees and costs of approximately $55,000. The time records submitted contained entries for both this case and the companion case. The Williamses responded to the motion. However, there is no evidence the circuit court ruled on the motion. The Williamses do not raise any issues about attorney's fees. In

III. *Issues on Appeal*

The Williamses argues that the circuit court erred in (1) manufacturing immaterial terms to facilitate Crump's closing of the option because the burden of closing the option with any unnegotiated "immaterial terms" was on Crump; (2) considering extrinsic evidence in determining that the purchase price was $640,000; (3) imposing additional terms for the closing that were neither reflected in the option nor within any other agreement between the parties; and (4) finding the statute of frauds did not apply and that the option was valid.

IV. *Discussion*

Although the Williamses argue four points on appeal, the main (and dispositive) argument is whether the option violates the statute of frauds, Ark. Code Ann. § 4-59-101 (Supp. 2021). The Williamses also argue that the option cannot serve as both an option and a contract for sale. The rest of the arguments are simply refinements on the main argument. We start with the contract issue.

We begin with the most fundamental inquiry in contract law: whether Crump and the Williamses had a contract. It was Crump's burden to prove the existence of a contract. *Freeman Holdings of Ark., LLC v. FNBC Bancorp, Inc.*, 2019 Ark. App. 165, 574 S.W.3d 181; *Grisanti v. Zanone*, 2010 Ark. App. 545, 336 S.W.3d 886.

---

*Harold Ives Trucking Co. v. Pro Transportation*, 341 Ark. 735, 19 S.W.3d 600 (2000), our supreme court held that an award of attorney's fees is a collateral matter that does not affect the appealability of the underlying order.

Certain essential principles apply to the formation of a contract. Very simply stated, a contract requires an offer and an acceptance. *Freeman Holdings*, *supra*. An option is merely an offer by one party to sell within a limited period of time and a right acquired by the other party to accept or reject such offer within such time. *See Swift v. Erwin*, 104 Ark. 459, 148 S.W. 267 (1912); *Heartland Cmty. Bank v. Holt*, 68 Ark. App. 30, 3 S.W.3d 694 (1999). Here, there is no dispute that Crump timely and properly exercised his option. In their brief, the Williamses do not argue that Crump's exercise of the option did not create a bilateral contract. Instead, the Williamses try to distinguish an unexercised option from a bilateral contract.

This leads to the next question: whether Crump's exercise of the option created a binding contract for the purchase and sale of the property. The Williamses contend that it did not. The three main arguments for reversal are that the price term and the closing-date term are too uncertain to satisfy the statute of frauds and that there was no mutual agreement as to certain "missing" terms that the circuit court added in its order, preventing a contract for sale from being formed.

A memorandum satisfies the statute of frauds if it identifies the subject of the parties' agreement, shows that they made a contract, and states the *essential* contract terms with reasonable certainty. Restatement (Second) of Contracts § 131 (1981). Only the essential terms must be stated, details or particulars need not be. What is essential depends on the agreement and its context and also on the subsequent conduct of the parties. Restatement (Second) of Contracts § 131 cmt. g. Generally, the essential terms of a contract for the sale

8

of real property include (1) the terms and conditions of the sale, (2) the price to be paid, (3) the time for payment, and (4) the land to be sold. *Van Dyke v. Glover*, 326 Ark. 736, 743, 934 S.W.2d 204, 208 (1996).

The Williamses first argue that the price term in the option fails because it depends on further negotiations between the parties. They did not challenge the $640,000 figure in response to Crump's motion for summary judgment, instead relying on the statute of frauds. Moreover, attached to the Williamses' response was a letter from their attorney asking for an approval letter from Crump's lender in the amount of $640,000. During the hearing on the Williamses' motion for a Rule 54(b) certificate, the Williamses' attorney stated that "we have not questioned it [the purchase price being $640,000]." He also admitted that there was no affidavit or other paper disputing the amount. The failure to challenge the purchase price leaves the facts contained in Crump's affidavit uncontroverted and accepted as true and therefore entitles Crump to summary judgment because there is no justiciable issue on the facts. *Ashley v. Eisele*, 247 Ark. 281, 445 S.W.2d 76 (1969); *Gladden v. Trs. of the Pruitt Fam. Tr.*, 2015 Ark. App. 680, 477 S.W.3d 530; *Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000). Here, the circuit court found that the purchase price was $640,000 and that there was no good-faith basis for the Williamses to argue otherwise because that figure was not disputed in the Williamses' summary-judgment response. We find no error.

As to the Williamses' contention that the option fails to satisfy the statute of frauds because it lacked a specific date for closing , the Williamses do not argue the point in their

brief. Issues raised below but not argued on appeal are considered abandoned. *Springs v. State*, 2012 Ark. 87, 387 S.W.3d 143.

Next, the Williamses argues that there were additional terms omitted from the option that prevented it from becoming a real estate contract. These terms include (1) the party responsible for preparing the real estate contract; (2) how expenses will be paid for preparation of the real estate contract; (3) the party paying for the title commitment and other title services; (4) what type of warranty deed will be used, either general or special; (5) the party paying for preparation of the warranty deed; (6) relevant information about financing, which is necessary to determine which party prepares and pays for preparation of a settlement statement; and (7) who collects and pays postclosing costs, including deed stamps. The circuit court ruled that these terms were either adequately covered in the option or were not material. We agree.

The option provision requiring the Williamses to provide the title commitment implies that they will pay for it. The option further provides that the Williamses will "make, execute and deliver to [Crump] a Warranty Deed in proper form," again implying that they are responsible for its preparation and payment. As for the nature of the warranty deed, the law implies a general warranty deed. *Skinner v. Stone*, 144 Ark. 353, 357, 222 S.W. 360, 361 (1920); *Witter v. Biscoe*, 13 Ark. 422, 426 (1853). Arkansas Code Annotated section 26-60-106(3) (Repl. 2020) provides that "[u]nless agreed upon otherwise, the cost of the deed stamps shall be paid one-half (½) by the grantor or seller and one-half (½) by the grantee or

purchaser." Here, the option was silent as to this term; thus, the parties equally share this cost.

In their brief, the Williamses contend that there was never an agreement to a second set of terms, referred to as the "Disputed Terms."[5] These terms were ordered by the circuit court in its order amending the original summary-judgment order. These terms and conditions are merely details and particulars not required to be contained in the writing to satisfy the statute of frauds. Moreover, the Williamses never objected to these "Disputed Terms" or otherwise raised any issue about them in the circuit court. At the hearing on the motion for a Rule 54(b) certificate, the circuit court announced several times that it was going to amend the summary-judgment order. The result was the circuit court's addition of the "Disputed Terms." Despite the court's announcing its intention to amend its order, the Williamses did not object either before or after the entry of the amended order. An appellant waives an argument on appeal by failing to object at the first opportunity. *Herrington v. Ford Motor Co.*, 2010 Ark. App. 407, at 13, 376 S.W.3d 476, 483.

Having reviewed the record, we hold that the properly exercised option ripened into a binding contract that satisfied the statute of frauds; consequently, we affirm the circuit court's judgment.

Affirmed.

---

[5]As set out in the Williamses' brief, these "Disputed Terms" are (1) that Crump was entitled to select and use a real estate closing agent of his choice; (2) that closing costs shall be allocated in accordance with "normal practices," and (3) that the Williamses must sign other closing documents as prepared by the designated closing agent.

VIRDEN and MURPHY, JJ., agree.

*Parker Hurst & Burnett PLC*, by: *Donald L. Parker II* and *Ronald S. Burnett, Jr.*, for appellants.

*Lyons & Cone, P.L.C.*, by: *Jim Lyons* and *David D. Tyler*, for appellee.